**Johnny Glen EISEN, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–00–057–CR.**

Court of Appeals of Texas, Waco.

Feb. 7, 2001.

Rehearing Overruled April 18, 2001.

---

Carey Fraser, Stephenville, for appellant.

B.J. Shepherd, Hamilton County Dist. Atty., Martin L. Peterson, Hamilton County Asst. Dist. Atty., Meridian, for appellee.

Before Chief Justice DAVIS, VANCE and GRAY, Justices.

## OPINION

VANCE, Justice.

We must decide whether: (1) a trial judge abused his discretion in revoking community supervision, (2) the common-law right of "allocution" has achieved constitutional status, and (3) article 42.07 applies to a proceeding in which the court revokes community supervision and imposes the punishment previously determined. Finding that the judge did not abuse his discretion, that allocution is not included among our constitutional rights, and that any complaint about a failure to follow article 42.07 must be preserved in the trial court, we will affirm.

## PROCEDURAL HISTORY

Johnny Glen Eisen, Jr. was charged with delivery of one-fourth ounce or less of marihuana, for remuneration, within 1000 feet of school property. TEX.HEALTH & SAFETY CODE ANN. § 481.134 (Vernon Supp. 2001). The offense is a state jail felony. TEX.PEN.CODE ANN. § 12.35 (Vernon 1994).

Eisen pled guilty under a plea-bargain agreement and was sentenced to eighteen months in a state jail facility but was placed on community supervision for a four-year period beginning October 28, 1997. He was ordered to pay a $2,000 fine and $140 restitution in monthly installments of $60 each, along with nineteen other conditions of community supervision.

On February 4, 1998, the State filed a motion alleging five violations of the conditions of his community supervision order.[1] The court found the violations to be "true" but continued community supervision with a modification that required completion of a treatment program. On June 9, 1998, a second motion to revoke community supervision was filed, alleging three violations of the conditions.[2] Again, although the court found the violations to be "true," Eisen was continued on community supervision with a modification that required him to live in an Intermediate Sanction Facility for twenty-four months and abide by its rules and regulations. Finally, on December 3, 1999, the State filed a third motion to revoke community supervision, alleging eleven violations of the conditions of Eisen's community supervision order.[3]

On January 11, 2000, Eisen pled "true" to all violations alleged in the third motion. He and his mother testified that he had changed since he had fathered a child in November of 1999.[4] At the conclusion of the hearing, the trial judge stated, "While I agree that somebody—people deserve a

---

1. This motion alleged one violation of law-appearing in a public place under the influence of an intoxicant, failing to pay the fine and restitution, failing to perform community service, failing to attend a counseling program, and being present where others were smoking marihuana.

2. None of the allegations were violations of law. They included failing to pay the fine and restitution, failing to pay fees, and failing to complete the treatment program.

3. The third motion alleged leaving Hamilton County without permission of the community supervision officer, failing to report to the

officer, smoking marihuana, using methamphetamine, consuming alcoholic beverages on two occasions, failing to report a change of address, failing to pay the fine and fees, failing to perform community service from June through October of 1999, and failing to attend fifteen counseling sessions during that period.

4. He also testified that he and the child's mother were not married but were living together with his parents. He said, "I got my daughter now. I plan to get married after I get my divorce and, you know, I guess I'm trying to grow up and get everything right back together."

second chance and may deserve a third chance, [however] even [his mother] didn't go so far as to say a fourth chance and that's what this would be." He then revoked Eisen's community supervision and imposed the original punishment of eighteen months in a state jail facility.

## ISSUES ON APPEAL

Eisen asserts two issues on appeal: (1) Did the trial court err in its reliance upon a faulty factual basis for disposition and sentencing?; and (2) Is article 42.07 of the Code of Criminal Procedure facially unconstitutional and, if so, was he harmed?

## ABUSE OF DISCRETION

Eisen asserts that the "faulty factual basis" for the court's revocation order is that the court perceived this to be his "fourth chance" when in reality it was only his third. This, he argues, led to the court's "irrational decision-making" and an abuse of discretion. Based on this, he asks us to reverse the order revoking his community supervision.

■■■ Acknowledging that a proceeding in which the court is deciding whether to revoke community supervision is an administrative hearing and citing *Davenport v. State*, Eisen tells us that the "key question is whether the defendant broke the contract he made with the state." *Davenport v. State*, 574 S.W.2d 73, 75 (Tex.Crim. App.1978), *overruled by Ex parte Tarver*, 725 S.W.2d 195, 197 n. 1 (Tex.Crim.App. 1986). He acknowledges that the court may exercise its discretion to revoke or continue community supervision and that we must examine the record in the light most favorable to the trial judge's decision. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex.Crim.App.1984).

■■■ He contends that, because the judge stated that it would be Eisen's "fourth chance," the judge drew an unreasonable inference from the evidence which produced an irrational decision to revoke Eisen's community supervision rather than continue it a third time. This, he says was an abuse of the judge's discretion. We reject that contention. Eisen had been on community supervision for less than four months when the first motion to revoke his community supervision was filed. During the next year and one-half, two additional motions were filed. In all, Eisen pled "true" to nineteen violations of the requirements of his community supervision order. We decline to say that the trial judge abused his discretion by revoking Eisen's community supervision.[5] We find issue one to be without merit.

## ALLOCUTION AND ARTICLE 42.07

Eisen's second issue is novel. We commend his counsel for his creative argument. His argument follows this line of reasoning: (1) the right of "allocution" is of constitutional dimension; (2) article 42.07 of the Code of Criminal Procedure, entitled "Reasons to prevent sentence," is our legislature's implementation of the right of allocution; (3) article 42.07 enumerates only three reasons that may be advanced to prevent sentencing; (4) the legislature's restriction in article 42.07 to only three reasons as grounds to prevent sentence from being imposed unduly restricts the constitutional right of allocution; (5) thus, article 42.07 is unconstitutional on its face.

### ALLOCUTION

■■■ In modern legal usage, "allocution" refers to a trial judge's asking a criminal

---

5. Furthermore, the judge was arguably correct. Eisen's first chance was when he was placed on community supervision. His second and third were when it was continued on two occasions. His fourth would have been an additional extension.

defendant to "speak in mitigation of the sentence to be imposed." *A Dictionary of Modern Legal Usage* 45 (Bryan A. Garner ed., 2nd ed., Oxford 1995). "By SLIPSHOD EXTENSION, the word has come to denote the accused person's speech in mitigation of the sentence, rather than the judge's address asking the accused to speak." *Id.*

The origin of allocution in early times is difficult, if not impossible, to discover. Paul W. Barrett, *Allocution,* 9 Mo.L.Rev. 115, 115 (1944). It is not certain whether it applied to all cases or only capital crimes, what official of the court delivered it, at what stage of the proceeding was the ritual obligatory, what was the result when omitted or imperfectly performed, or what responses the prisoner could make. *Id.* at 116–18. According to one writer, only four reported English cases from the seventeenth and eighteenth centuries form the whole basis for the doctrine of allocution. *Id.* at 121, 123. By 1935, the ceremony of allocution was no longer performed in non-capital felonies in England, and a writer in *Solicitor's Journal* acknowledged that the common law circumstances necessitating such procedure no longer existed. *Id.* at 124 & n. 44 (citing *Allocutus (A Point In Criminal Law)* (1935) 79 Sol. J. 137–138 (Pt. 1, 1935)).

ARTICLE 42.07

Texas has long had a procedural rule implementing allocution. In early Texas, sentence was not pronounced until after the appeal process. *See Snodgrass v. State,* 67 Tex.Crim. 615, 150 S.W. 162, 172 (1912). The reasons the accused could advance to prevent sentence were: (1) that the defendant had received a pardon from the proper authority; and (2) that the defendant was insane. *Id.* (citing article 688 of the Code of Criminal Procedure of 1857). Substantially the same rule was provided in article 861 of the Revised Code of Procedure of 1911. *See id.* at 173.

Article 773 of the Penal Code of 1925 allowed four responses by the accused: (1) that the accused had received a pardon; (2) that he was insane; (3) that there has been no motion for new trial or a motion in arrest of judgment, and he desired to make one and had good grounds therefor; and (4) that he claimed he was not the person convicted. *See Hughes v. State,* 106 Tex.Crim. 550, 293 S.W. 575, 576 (1927).

The current version, article 42.07, provides:

**Reasons to prevent sentence**

Before pronouncing sentence, the defendant shall be asked whether he has anything to say why the sentence should not be pronounced against him. The only reasons which can be shown, on account of which sentence cannot be pronounced, are:

1. That the defendant has received a pardon from the proper authority, on the presentation of which, legally authenticated, he shall be discharged.

2. That the defendant is incompetent to stand trial; and if evidence be shown to support a finding of incompetency to stand trial, no sentence shall be pronounced, and the court shall proceed under Article 46.02 of this code; and

3. When a person who has been convicted escapes after conviction and before sentence and an individual supposed to be the same has been arrested he may before sentence is pronounced, deny that he is the person convicted, and an issue be accordingly tried before a jury, or before the court if a jury is waived, as to his identity.

TEX.CODE CRIM.PROC.ANN. art. 42.07 (Vernon Supp.2001).

We note first that Eisen raises the entire "allocution" issue for the first time on appeal. We also note that the reporter's

record reflects that the trial judge did not invoke article 42.07 after he revoked Eisen's community supervision order and before directing that he serve the punishment that had been previously assessed. Indeed, he did not address Eisen at all. Thus, as we confront the second issue our line of inquiry will ask these questions:

- Is there an independent constitutional right of allocution?
- If so, was Eisen harmed when the court failed to make the inquiry?
- If not, does article 42.07 apply at the point in a proceeding when a defendant's community supervision has been revoked and the court is about to impose the punishment that had been assessed when the defendant was placed on community supervision?
- If article 42.07 does apply, did Eisen preserve a complaint that it was not applied and, if so, was he harmed by the court's failure to ask whether he had anything to say about why the sentence should not be pronounced against him?

### IS THERE A CONSTITUTIONAL RIGHT OF ALLOCUTION?

Both Texas and the federal system have rules requiring some form of allocution. *Id.;* FED.R.CRIM.P. 32(c)(3)(C) (2000). We look first to how the federal courts address the requirement of federal procedural rule 32, which allows for a broader response from the defendant than article 42.07 allows.

The United States Supreme Court addressed the requirement of rule 32 in *Green v. United States:*

The design of Rule 32(a) did not begin with its promulgation; its legal provenance was the common-law right of allocution. As early as 1689, it was recognized that the court's failure to ask the

defendant if he had anything to say before sentence was imposed required reversal. *See Anonymous,* 3 Mod. 265, 266, 87 Eng.Rep. 175 (K.B.). Taken in the context of its history, there can be little doubt that the drafters of Rule 32(a) intended that the defendant be personally afforded the opportunity to speak before imposition of sentence. We are not unmindful of the relevant major changes that have evolved in criminal procedure since the seventeenth century—the sharp decrease in the number of crimes which were punishable by death, the right of the defendant to testify on his own behalf, and the right to counsel. But we see no reason why a procedural rule should be limited to the circumstances under which it arose if reasons for the right it protects remain. None of these modern innovations lessens the need for the defendant, personally, to have the opportunity to present to the court his plea in mitigation. The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself. We are buttressed in this conclusion by the fact that the Rule explicitly affords the defendant two rights: 'to make a statement in his own behalf,' and 'to present any information in mitigation of punishment.' We therefore reject the Government's contention that merely affording defendant's counsel the opportunity to speak fulfills the dual role of Rule 32(a). *See Taylor v. United States,* 9 Cir., 1960, 285 F.2d 703.

*Green v. United States,* 365 U.S. 301, 304, 81 S.Ct. 653, 655, 5 L.Ed.2d 670, 672 (1961). The court went on to determine that Green had been provided the right the rule gave him, then admonished the trial judges:

However, to avoid litigation arising out of ambiguous records in order to determine whether the trial judge did address himself to the defendant personally, we think that the problem should be, as it readily can be, taken out of the realm of controversy. This is easily accomplished. Trial judges before sentencing should, as a matter of good judicial administration, unambiguously address themselves to the defendant. Hereafter trial judges should leave no room for doubt that the defendant has been issued a personal invitation to speak prior to sentencing.

*Id.*, 365 U.S. at 305, 81 S.Ct. at 655.

One year later, the court declined to hold that a prisoner could collaterally attack a judgment based on a complete denial of his right under federal rule 32(a):

Rule 32(a) in pertinent part provides: 'Before imposing sentence the court shall afford the defendant an opportunity to make a statement in his own behalf and to present any information in mitigation of punishment.' The meaning of this Rule was before the Court last Term in *Green v. United States*, 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed.2d 670. Although there was no Court opinion in the *Green* case, eight members of the Court concurred in the view that Rule 32(a) requires a district judge before imposing sentence to afford every convicted defendant an opportunity personally to speak in his own behalf. There thus remains no doubt as to what the Rule commands. Moreover, the present record makes clear that this petitioner was not given an express opportunity to make a personal statement at the time he was sentenced. This case, therefore,

is totally unembarrassed by any such factual controversy as divided the Court in *Green.* The only issue presented is whether a district court's failure explicitly to afford a defendant an opportunity to make a statement at the time of sentencing furnishes, without more, grounds for a successful collateral attack upon the judgment and sentence. We hold that the failure to follow the formal requirements of Rule 32(a) is not of itself an error that can be raised by collateral attack, and we accordingly affirm the judgment of the Court of Appeals.

*Hill v. United States*, 368 U.S. 424, 425–26, 82 S.Ct. 468, 470, 7 L.Ed.2d 417 (1962) (footnote omitted).

■ In 1971, the Supreme Court acknowledged that it has never decided whether allocution relating to punishment is included among our constitutional rights. *McGautha v. California*, 402 U.S. 183, 218–19, 91 S.Ct. 1454, 1473, 28 L.Ed.2d 711 (1971) ("This Court has not directly determined whether or to what extent the concept of due process of law requires that a criminal defendant wishing to present evidence or argument presumably relevant to the issues involved in sentencing should be permitted to do so. Assuming, without deciding, that the Constitution does require such an opportunity, there was no denial of such a right in Crampton's case.") (footnote omitted), *judgment vacated by, Crampton v. Ohio*, 408 U.S. 941, 92 S.Ct. 2873, 33 L.Ed.2d 765 (1972).

Because we must independently determine whether the right of allocution is of constitutional dimension, we turn our inquiry to the incorporation of common-law rules into the United States Constitution.[6]

**6.** Although Eisen raises the same question with respect to the due-course-of-law clause of the Texas Constitution, article I, section 29, he did not "carefully separate federal and state issues into separate grounds and provide substantive analysis or argument on each separate ground." *Heitman v. State*, 815 S.W.2d 681, 690 n. 23 (Tex.Crim.App.1991).

■ Not many common-law rules have been elevated to the status of constitutional rights. *Gannett Co., Inc. v. DePasquale,* 443 U.S. 368, 384, 99 S.Ct. 2898, 2908, 61 L.Ed.2d 608 (1979). The provisions of our Constitution do reflect an incorporation of a few common-law rules and a rejection of others. *Id.,* 443 U.S. at 384–85, 99 S.Ct. at 2908. Some common-law rules were expressly abrogated by the Constitution.[7] *Washington v. Texas,* 388 U.S. 14, 19–20, 87 S.Ct. 1920, 1923–24, 18 L.Ed.2d 1019 (1967). It is, of course, fundamental that when the Constitution protects a right, the legislative branch may not abrogate it. *Alden v. Maine,* 527 U.S. 706, 733, 119 S.Ct. 2240, 2256, 144 L.Ed.2d 636 (1999) ("The text and the structure of the Constitution protect various rights and principles. Many of these, such as the right to trial by jury and the prohibition on unreasonable searches and seizures, derive from the common law. The common-law lineage of these rights does not mean they are defeasible by statute or remain mere common-law rights, however. They are, rather, constitutional rights, and form the fundamental law of the land.") (discussing sovereign immunity).

"A person has no property, no vested interest, in any rule of the common law." *Mondou v. New York, N.H. & H. R.R. Co.,* 223 U.S. 1, 50, 32 S.Ct. 169, 175, 56 L.Ed. 327 (1912) (quoting *Munn v. Illinois,* 94 U.S. 113, 134, 4 Otto 113, 24 L.Ed. 77 (1877)). The "Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object."

*Silver v. Silver,* 280 U.S. 117, 122, 50 S.Ct. 57, 58, 74 L.Ed. 221 (1929).

■ As we have noted, not all common-law rights are incorporated into the Constitution and a person has no vested interest in a common-law rule. *See Mondou,* 223 U.S. at 50, 32 S.Ct. at 175. Thus, the legislature may modify a common-law right to achieve a "permissible legislative object." *See Silver,* 280 U.S. at 122, 50 S.Ct. at 58.

Many of the rights of an accused that we take for granted because they are now recognized as constitutional rights were, at common law, limited. The common law did not guarantee that a criminal defendant would have access to counsel, did not always permit a defendant to testify, did not provide compulsory process to obtain witnesses, and did not guarantee that the accused could confront his accuser. Because we now guarantee those rights, an accused will be heard through his counsel and will have access to witnesses who can aid his defense.

■ At the time article 42.07 comes into play, legal matters on the record have already been brought to the court's attention; factual matters relating to punishment have been presented through the evidence. The limitations of that article are designed to allow the defendant to bring to the court's attention legal bars to the imposition of punishment that may not be of record, specifically including a pardon, incompetency, and mistaken identity. Tex.Code Crim.Proc.Ann. art. 42.07. Thus,

---

7. "Joseph Story, in his famous Commentaries on the Constitution of the United States, observed that the right to compulsory process was included in the Bill of Rights in reaction to the notorious common-law rule that in cases of treason or felony the accused was not allowed to introduce witnesses in his defense at all. Although the absolute prohibition of witnesses for the defense had been abolished in England by statute before 1787, the Framers of the Constitution felt it necessary specifically to provide that defendants in criminal cases should be provided the means of obtaining witnesses so that their own evidence, as well as the prosecution's, might be evaluated by the jury." *Washington v. Texas,* 388 U.S. 14, 19–20, 87 S.Ct. 1920, 1923-24, 18 L.Ed.2d 1019 (1967) (footnotes omitted).

we believe that the legislature's limit to matters in bar of a sentence are reasonable and achieve a permissible legislative object. *See Silver,* 280 U .S. at 122, 50 S.Ct. at 58.

 We hold that the common-law right of allocution did not achieve constitutional status. Having so held, we find that the court did not err when it failed to make a common-law "allocution-inquiry" before sentencing Eisen. We turn to the question of whether the court should have invoked article 42.07.

## DOES ARTICLE 42.07 APPLY WHEN COMMUNITY SUPERVISION IS REVOKED?

Section 23 of article 42.12 of the Code of Criminal Procedure, entitled "Revocation," provides:

(a) If community supervision is revoked after a hearing under Section 21 of this article, the judge may proceed to dispose of the case as if there had been no community supervision, or if the judge determines that the best interests of society and the defendant would be served by a shorter term of confinement, reduce the term of confinement originally assessed to any term of confinement not less than the minimum prescribed for the offense of which the defendant was convicted. The judge shall enter the amount of restitution or reparation owed by the defendant on the date of revocation in the judgment in the case.

(b) No part of the time that the defendant is on community supervision shall be considered as any part of the time that he *shall be sentenced* to serve. The right of the defendant to appeal for a review of the conviction and punishment, as provided by law, shall be accorded the defendant at the time he is placed on community supervision. When he is notified that his community supervision is revoked for violation of the conditions of community supervision and he is called on to serve a sentence in a jail or in the institutional division of the Texas Department of Criminal Justice, he may appeal the revocation.

TEX.CODE CRIM.PROC.ANN. art. 42.12, § 23 (Vernon Supp.2001) (emphasis added). Section 23 appears to contemplate that, while a defendant is under a community supervision order, he has not yet been sentenced. Article 42.02 of the Code defines "Sentence" and provides: "The sentence is that part of the judgment, *or order revoking a suspension of the imposition of a sentence,* that orders that the punishment be carried into execution in the manner prescribed by law." *Id.* art. 42.02 (emphasis added).

 Because article 42.12, section 23 provides that a person on community supervision is sentenced upon revocation and because article 42.02 provides that an order of revocation is a "sentence," we conclude and hold that article 42.07 applies when community supervision is revoked and the court is about to impose the punishment. *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App.1991) (When the literal text of a statute is clear, the court must give effect to the plain meaning of the text.).

Having determined that article 42.07 applied to Eisen's revocation proceeding, we must address the court's failure to invoke it.

## FAILURE TO APPLY ARTICLE 42.07

 The "Judgment Revoking Community Supervision Sentenced to State Jail" in this cause states: "And thereupon the Court asked the Defendant whether the Defendant had anything to say why sentence should not be pronounced upon said Defendant, and the Defendant an-

swered nothing in bar thereof. Whereupon the Court proceeded, . . . ."

The Beaumont Court of Appeals addressed a failure to follow article 42.07 in *Hernandez v. State:*

> Appellant next complains of error "in denying appellant his right of allocution." He argues that the provisions of VERNON's ANN. C.C. P., Art. 42.07, mandates that, prior to sentencing, he be asked if he has anything to say why the sentence should not be pronounced. The record shows that such question was not asked by the trial court. Even though Art. 42.07 does provide that such question be asked of appellant, it (Art. 42.07) further provides that only certain specified "reasons" can be shown "on account of which sentence cannot be pronounced." There were no objections to the court's failure to inquire of the appellant if he had anything to say why the sentence should not be pronounced against him. There was no contention then or now that any of the statutory reasons set out in Art. 42.07 to prevent the pronouncement of sentence ever existed.

*Hernandez v. State,* 628 S.W.2d 145, 147 (Tex.App.—Beaumont 1982, no pet.) (citing *Tenon v. State,* 563 S.W.2d 622, 623 (Tex. Crim.App. [Panel Op.] 1978)) (written judgment recited that article 42.07 was implemented); *see also McClintick v. State,* 508 S.W.2d 616, 618 (Tex.Crim.App. 1974) (Contention that statute did not replace the common-law right of allocution presented nothing for review where defendant admitted that he did not raise such contention before the trial court prior to imposition of sentence.); *Valdez v. State,* 479 S.W.2d 927, 929 (Tex.Crim.App.1972).

Preservation of complaints for review by appellate courts is required by our appellate rules. TEX.R.APP.P. 33.1. Based on the authorities cited, we hold a complaint about the court's failure to follow article 42.07 was not preserved for our review. *Id.* We cannot close, however, without noting that the better practice would always be to allow full rights under article 42.07.

We find issue two to be without merit.

## CONCLUSION

Having found both of Eisen's issues to be without merit, we affirm the order revoking community supervision and imposing sentence.