NUMBER 13-03-112-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG



GARY EUGENE HENKEL,                                                           Appellant,

v.

STATE OF TEXAS,                                                                        Appellee.




On appeal from the 398th District Court
of Hidalgo County, Texas.



 
MEMORANDUM OPINION



 
Before Chief Justice Valdez, and Justices Hinojosa, and Castillo
Memorandum Opinion by Justice Castillo
 
          Appellant Gary Eugene Henkel appeals his conviction for indecency with a child.


 
We affirm in part and remand in part.
I. BACKGROUND
            On February 7, 2001, the State of Texas charged Henkel with two counts of
aggravated assault of a child and two counts of indecency with a child. Following Henkel's
guilty plea on April 17, 2001, the trial court deferred adjudication on counts 3 and 4, the two
indecency with a child counts, and left the remaining two counts unadjudicated. The trial
court imposed a fine of $500 on count 3 and placed Henkel on community supervision for
a term of ten years on both counts. 
A. Terms and Conditions for Count 3
          The terms and conditions of Henkel's community supervision for count 3 required
that he: (1) avoid injurious or vicious habits (condition (B)); (2) work 240 hours at a
community service project for an organization approved by the Judge and designated by
the Hidalgo County Community Supervision and Corrections Department at the rate of eight
(8) hours per week (condition (O)); (3) not go in, on, or within 500 feet of a premises where
children commonly gather, including a school, day-care facility, playground, public or private
youth center, public swimming pool, or video arcade facility (condition (Q)); (4) attend
treatment or counseling sessions for sex offenders, report to the sex offender program
supervision officer and comply with the treatment, and obey all rules and regulations of the
program (condition (R)); and (5) pay a $5.00 supervision fee per month (condition (T)). 
B. Terms and Conditions for Count 4
          The terms and conditions of Henkel's community supervision for count 4 required
that he: (1) avoid injurious or vicious habits (condition (B)); (2) participate in the Hidalgo
County Education and Employment Program, submit to scholastic testing,
academic/vocational counseling, and achieve an educational skill level equal to or greater
than the average skill level of students who have completed the sixth grade in public
schools and remain in the program until completed or further order of the court (condition
(I)); (3) not go in, on, or within 500 feet of a premises where children commonly gather,
including a school, day-care facility, playground, public or private youth center, public
swimming pool, or video arcade facility (condition (K)); and (4) attend treatment or
counseling sessions for sex offenders, report to the sex offender program supervision
officer and comply with the treatment, and obey all rules and regulations of the program
(condition (L)). 
C. Motions to Adjudicate Guilt
          On October 18, 2002, the State filed separate motions to adjudicate guilt as to count
3 and count 4. The State alleged that Henkel violated the terms and conditions of his
community supervision for count 3 by: (1) not avoiding injurious or vicious habits; (2) being
$150 in arrears in payment of the fine; (3) being $225 delinquent in the payment toward
court appointed counsel fees; (4) being $117.25 delinquent toward payment of his court
costs; (5) being $392 delinquent toward payment of the monthly fee; (6) not performing 240
hours community service; (7) going in, on, or within a premises where children commonly
gather; (8) failing to attend the sex offender program and/or comply with the treatment
and/or obey all rules and regulations; and (9) being $80 delinquent in paying the sex
offender fee. 
          As to count 4, the State alleged that Henkel violated the terms and conditions of his
community supervision by: (1) not avoiding injurious or vicious habits; (2) failing to attend
and comply with the rules of the Education and Employment Program; (3) going in, on, or
within 500 feet of a premises where children commonly gather; and (4) failing to attend the
sex offender program. 
D. The Testimony
          Henkel's counsel announced ready. The trial court took judicial notice of the file and
held an evidentiary hearing. The State's sole witness was Henkel's probation officer, Sarah
Cervantes. Henkel testified in his own defense and called four witnesses, including his
sister, Susan Post, his mother, Rosa Frost, his girlfriend, Mary Flores, and her mother,
Rosario Flores. 
          Cervantes testified that Henkel tested positive for marihuana. He was assigned
community service work and did not perform it. She made a home visit to his reported
residence and told him he must move because the home was within 500 feet of a school
playground. She testified that Henkel was assigned to a sex offender treatment program
and missed several sessions. She was aware of Henkel's financial problems but he was
able to and capable of working. Cervantes also testified that Henkel made efforts to keep
his payments current but they were not enough. 
          Henkel admitted that he signed the form containing the terms and conditions of his
community supervision. He admitted that the form contained the requirement that he
perform eight hours of community service each week with a projected completion date of
December 31, 2001. He admitted he did not comply. He believed the term "complete by"
meant he could complete the hours by the date shown and not have a problem. Regarding
the condition that he not reside within 500 feet of a premises where children gather, Henkel
admitted that he was aware of the condition and that he lived close to a school and
playground. He testified he moved into the residence because he was evicted from his
former residence and had no place to live. He testified that he could have lived with his
sister, but Cervantes did not approve. Henkel testified that he reported his change of
address to the police and to Cervantes. Cervantes told him to move. Regarding the
delinquency of his fees and fine, Henkel testified he explained to Cervantes that he had
difficulty finding work because of the charged offenses and had problems finding
transportation to work. At the time, he worked about thirty hours a week during the
graveyard shift at a restaurant. He was saving money because his girlfriend was pregnant
and he wanted to meet his financial obligations toward the child including finding a suitable
place to live. He testified he made payments. He admitted he did not call Cervantes to tell
her he could not pay but, when he reported in person, he did tell her the reasons he had not
paid. 
          Henkel testified he also had problems with transportation to the sex offender classes. 
Post, his sister, testified that Henkel could have lived with her and that she lived near a
school but far enough away to comply with his conditions. Post drove him to his sex
offender classes and to meetings with his probation officer because he had problems with
transportation. When he could not make it to his classes because of transportation
problems, Henkel called his probation officer. 
          Frost, Henkel's mother, testified that she recently loaned him money to move out of
his current residence. Rosario Flores testified she allowed Henkel, her daughter's
boyfriend, to live in her home near a Catholic school after he was evicted. She provided
transportation for Henkel to report to his probation officer and classes. His check stubs
were at times $50 because of child support deductions. A probation officer came by to
inspect the house. Mary Flores testified that she made Henkel's payments toward his fines
and she went with him to his classes. 
E. The Adjudication of Guilt and Assessment of Punishment
          After hearing the evidence, the trial court adjudicated guilt. The trial court found
Henkel violated the conditions B, O, Q, R, and T in count 3 and conditions B, I, K, and L in
count 4. The following ensued: 
THE COURT: Having made this [sic] findings on each count, the Court is
going to sentence – it's going to be the judgment of the Court you be confined
in the Texas Department of Criminal Justice for a period of 20 years. The
Court is going to have these sentences run concurrent. The Court is going
to grant you time for time served. Any further evidence?
 
          [PROSECUTOR]: No, Your Honor.
 
[PROBATION OFFICER]: No, Your Honor.
 
[DEFENSE COUNSEL]: Nothing further, Your Honor.
 
THE COURT: You may be excused. The Court is going to order the sheriff
of Hidalgo County have and recover of you until they are able to escort you
to the Texas Department of Corrections for a period of 20 years.
 
II. ISSUES
          In his first issue, Henkel asserts we have jurisdiction even though he filed a general
notice of appeal. In his second and third issues, he asserts he was denied effective
assistance of counsel. In his fourth issue, he complains of the denial of his right to
allocution. In his fifth and sixth issues, he complains of the variance between the trial
court's oral findings of violations of his community supervision conditions and written
findings in the judgment. 
III. JURISDICTION
          In his first issue, Henkel asserts that we have jurisdiction over his appeal even 
though he filed a general notice of appeal. The State concedes that this Court has
jurisdiction to consider Henkel's challenges to the process by which he was sentenced after
adjudication of his guilt in his second and third issues, but argues we have no jurisdiction
over Henkel's fifth and sixth issues. Because the parties do not agree on the bases for our
jurisdiction, we review the nature of the proceedings before us. 
A. Adjudication of GuiltThere are two kinds of community supervision. “Regular” community supervision
means placing a defendant under a continuum of programs and sanctions for a specified
period after conviction and sentencing, during which period imposition of sentence is
suspended in whole or in part. “Deferred adjudication” community supervision means
placing a defendant under a continuum of programs and sanctions for a specified period
without adjudication of guilt and, consequently, before sentencing. See Tex. Code Crim.
Proc. Ann. art. 42.12, § 2(2)(A) (Vernon Supp. 2004-05). Imposition and revocation of both
regular and deferred adjudication community supervision proceed in the same way through
imposition of terms and conditions, notice of revocation, and revocation hearing. Tex. Code
Crim. Proc. Ann. art. 42.12, §§ 3, 5(b), 21, 23 (Vernon Supp. 2004-05). 
          A defendant must appeal the trial court’s imposition of deferred adjudication
community supervision at the time it is ordered. Tex. Code Crim. Proc. Ann. art. 44.01(j)
(Vernon Supp. 2004-05); Nix v. State, 65 S.W.3d 664, 667 (Tex. Crim. App. 2001) (en
banc); Manuel v. State, 994 S.W.2d 658, 661-62 (Tex. Crim. App. 1999). The process for
revoking deferred adjudication community supervision is the same as revocation
proceedings in regular community supervision cases. See Tex. Code Crim. Proc.
Ann. art. 42.12, §§ 5(b), 21, 23(a) (Vernon Supp. 2004-05). However, the resemblance
between deferred adjudication and regular community supervision revocation proceedings
ends there. The distinction arises from the trial court’s deferral of a finding of guilt when
imposing deferred adjudication community supervision. See Tex. Code Crim. Proc. Ann.
art. 42.12 § 5(b) (Vernon Supp. 2004-05). Appeal from the revocation of deferred
adjudication community supervision is strictly limited by statute.  Id. 
B. The Adjudication Decision
          The code of criminal procedure expressly denies a defendant the right to appeal a
trial court’s adjudication decision:
On violation of a condition of community supervision imposed under
Subsection (a) of this section, the defendant may be arrested and detained
as provided in Section 21 of this article. The defendant is entitled to a hearing
limited to the determination by the court of whether it proceeds with an
adjudication of guilt on the original charge. No appeal may be taken from
this determination. After an adjudication of guilt, all proceedings, including
assessment of punishment, pronouncement of sentence, granting of
community supervision, and defendant's appeal continue as if the
adjudication of guilt had not been deferred. 
Id. (emphasis added). Thus, revocation of deferred adjudication community supervision
involves a component that proceedings revoking regular community supervision do not: the
adjudication decision. Issa v. State, 826 S.W.2d 159, 161 (Tex. Crim. App. 1992) (per
curiam) (en banc). Section 5(b) of article 42.12 prohibits a defendant who has been
adjudicated guilty of the original charge from raising on appeal contentions of error in the
adjudication decision. Connolly v. State, 983 S.W.2d 738, 741 (Tex. Crim. App. 1999). The
court of criminal appeals has made it clear, ”given the plain meaning” of section 5(b) of
article 42.12, that an appellant whose deferred adjudication probation has been revoked
and who has been adjudicated guilty of the original charge may not raise on appeal
contentions of error in the adjudication-of-guilt process. Id. Included within the term
“adjudication-of-guilt process” are challenges to sufficiency of the notice contained in the
terms and conditions of deferred adjudication probation, adequacy of the State’s notice of
violation, and sufficiency of the evidence to support the trial court’s revocation decision. 
See id. (and cited cases). We do not dismiss for want of jurisdiction appeals to the trial
court’s adjudication determination. See Bayless v. State, 91 S.W.3d 801, 805-06 (Tex.
2002). Rather, pursuant to the prohibition in section 5(b) of article 42.12, we overrule any
issue challenging the trial court’s adjudication determination, just as we would any other
issue that the appellant has procedurally waived. Tex. Code Crim. Proc. Ann. art.
42.12, § 5(b) (Vernon Supp. 2004-05); see Allen v. State, 84 S.W.3d 413, 418 (Tex.
App.–Fort Worth 2002, no pet.) (Dauphinot, J., dissenting). 
C. The Assessment of Punishment and Pronouncement of Sentence
          Once the trial court adjudicates the guilt of a defendant on deferred adjudication
community supervision, the assessment of punishment, pronouncement of sentence, and
the defendant’s appeal continue as if the adjudication of guilt had not been deferred. Tex.
Code Crim. Proc. Ann. art. 42.12, § 5(b) (Vernon Supp. 2004-05). Thus, a defendant may
appeal from a judgment adjudicating guilt when the issues raised by the appeal relate not
to the adjudication decision but to the punishment phase. See id; see also Kirtley v. State, 
56 S.W.3d 48, 51-52 (Tex. Crim. App. 2001) (addressing claim of ineffective assistance of
counsel at punishment phase following adjudication of guilt). We turn now to the issues
raised in Henkel's appeal. 
D. Our Jurisdiction
          On December 23, 2002, Henkel filed timely notices of appeal that invoked our
jurisdiction. The rules of appellate procedure governing how appeals proceed in criminal
cases were amended effective January 1, 2003. This Court applies those amended rules
of appellate procedure to all cases on appeal on the effective date of the amendments. 
Chavez v. State, 139 S.W.3d 43, 47 (Tex. App.–Corpus Christi 2004, pet. granted)


. 
However, this is not a plea bargain case. Thus, the provisions of rule 25.2 do not apply. 
See Dears v. State, Nos. PD-1963-03, PD-1964-03, PD-1965-03, 2005 Tex. Crim. App.
LEXIS 111, at *8 (Tex. Crim. App. Jan. 26, 2005). We agree with the State that we have
jurisdiction to review issues unrelated to the adjudication of Henkel's guilt. Kirtley,
56 S.W.3d at 51-52.
          Regarding Henkel's fifth and sixth issues complaining of a variance between the trial
court's oral pronouncement of the sentence and the judgment, we are authorized to: (1) 
modify the trial court's judgment and affirm it as modified, see Tex. R. App. P. 43.2(b); or (2)
remand for the trial court to make fact determinations as to whether the written
memorialization reflects what actually occurred. See Smith v. State, 801 S.W.2d 629, 633
(Tex. App.–Dallas 1991, pet. ref'd.) (remanding for trial judge to make fact determinations
as to whether order reflected what actually occurred; acknowledging that although
determining whether error is clerical or judicial is question of law, court of appeals does not
make fact determinations). Thus, we conclude we also have jurisdiction over Henkel's
appeal, including his fifth and sixth issues. We sustain Henkel's first issue.
IV. ALLOCUTION
          In his fourth issue, Henkel asserts that the trial court denied his constitutional,
statutory and common law rights of allocution. The State responds, generally, that the
issue is inadequately briefed. 
          In modern legal usage, "allocution" refers to a trial judge's asking a criminal
defendant to "speak in mitigation of the sentence to be imposed." Eisen v. State, 40
S.W.3d 628, 632 (Tex. App.–Waco 2001, no pet.). The word has come to denote the
accused person's speech in mitigation of the sentence, rather than the judge's address
asking the accused to speak. Id. Texas has long had a procedural rule implementing
allocution in article 42.07 of the code of criminal procedure. See id; Tex. Code Crim. Proc.
Ann. art. 42.07 (Vernon Supp. 2004-05). The current version of article 42.07 requires that
before pronouncing sentence, the defendant shall be asked whether he has anything to say
as to why the sentence should not be pronounced against him. Tex. Code Crim. Proc.
Ann. art. 42.07 (Vernon Supp. 2004-05); Eisen, 40 S.W.3d at 632. The rule is designed
to allow the defendant to bring to the court's attention legal bars to the imposition of
punishment that may not be of record, specifically including a pardon, incompetency, and
mistaken identity. Eisen, 40 S.W.3d at 635; see also Tex. Code Crim. Proc. Ann. art.
42.07 (Vernon Supp. 2004-05).
          Here, neither side presented any additional evidence on punishment. Henkel filed
a motion for reconsideration requesting that the trial court reconsider the sentence because
of mitigating circumstances. In the motion, Henkel asserted as mitigating circumstances
that: 
 [T]he sentence imposed in his case would cause a substantial hardship on
his family, given the fact that he is their sole financial provider and his wife
just gave birth to their newborn child. The family does not have any other
means of income or support, and a sentence of 20 years would clearly
jeopardize the family's social and economic stability. 
 
          Henkel has cited no authority in support of his state constitutional claims or explained
how that protection differs from that provided by the federal constitution. Appellant has
therefore waived his state constitutional claim. Narvaiz v. State, 840 S.W.2d 415, 432 (Tex.
Crim. App. 1992) (en banc); see also Lagrone v. State, 942 S.W.2d 602, 614 (Tex. Crim.
App. 1997) (en banc). Further, Henkel made no objection to the trial court, either at the
time of sentencing or in any post-trial motion, on any grounds regarding his sentence or his
alleged right of allocution. Even constitutional claims can be waived by failure to object. 
Smith v. State, 721 S.W.2d 844, 855 (Tex. Crim. App. 1986). To preserve an error for
appellate review, a party must present a timely objection to the trial court, state the specific
grounds for the objection, and obtain a ruling. Tex. R. App. P. 33.1(a). An appellant may
not complain of an allocution error if he has failed to object or otherwise raise error in the
trial court. Eisen, 40 S.W.3d at 637. Henkel's motion for new trial did not raise his federal
constitutional claims. We conclude that Henkel has forfeited his state and federal
constitutional complaints.  
          Even assuming that Henkel preserved error, his plea in mitigation in his motion for
new trial does not advance any of the legal bars to the imposition of punishment that may
not be of record. Specifically, Henkel has not shown his sentence could not be pronounced
because of a pardon, incompetency, and mistaken identity. See Tex. Code Crim. Proc.
Ann. art. 42.07 (Vernon Supp. 2004-05). In a subpart of his fourth issue, Henkel complains he was denied a punishment
hearing. When a trial court finds that an accused has committed a violation as alleged by
the State and adjudicates a previously deferred finding of guilt, the court then must conduct
a second phase of trial to determine punishment. Issa, 826 S.W.2d at 161. A defendant
preserves error on the denial of a request for a separate punishment hearing by objecting
at the time of the denial, or in the absence of an opportunity to object, by filing a motion for
new trial. Id; see also Hardeman v. State, 1 S.W.3d 689, 690 (Tex. Crim. App. 1999);
Pearson v. State, 994 S.W.2d 176, 179 (Tex. Crim. App. 1999) (en banc). Here, the trial
court asked if there was additional evidence and Henkel's counsel responded that there was
not. Henkel did not ask to present evidence on punishment, did not object to the trial court's
failure to ask him to present evidence on punishment, and did not file a motion for new trial
assigning this error. Accordingly, on appeal, Henkel has forfeited his right to complain of the
trial court's failure to conduct a separate punishment hearing. We overrule Henkel's fourth
issue. 
V. EFFECTIVE ASSISTANCE OF COUNSEL
          In his second issue, Henkel asserts that his trial counsel failed to call any available
witnesses to testify during the penalty phase. In his third issue, Henkel asserts he was
denied effective assistance of counsel when his trial counsel failed to preserve, and thus
waived, his allocution complaint. 
          A claim of ineffective assistance of counsel must be firmly supported in the record. 
McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996) (en banc). When
determining the validity of a defendant's claim of ineffective assistance of counsel, we must
be highly deferential to trial counsel and avoid the distorting effects of hindsight. Ingham
v. State, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984). We presume counsel's performance
was the result of sound or reasonable trial strategy. Strickland v. Washington, 466 U.S.
668, 688 (1984) (en banc); Stafford v. State, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991)
(en banc). We will not base a finding of ineffectiveness on speculation. Gamble v. State,
916 S.W.2d 92, 93 (Tex. App.–Houston [1st Dist.] 1996, no writ). 
          On this record, we conclude that Henkel has failed to establish that his trial counsel
was ineffective. Without a record of trial counsel's overall performance and strategic
decisions, we cannot determine if counsel's performance was objectively deficient or if it
created an unnecessarily disadvantageous result.


 See Jackson v. State, 877 S.W.2d 768,
771 (Tex. Crim. App. 1994) (en banc). Henkel has not rebutted the presumption he was
adequately represented. See id. We note that Henkel admitted to violating the terms and
conditions of his community supervision. We overrule Henkel's second and third issues. 
VI. JUDGMENT NUNC PRO TUNCIn his fifth and sixth issues, Henkel requests that we reform the trial court judgment
to reflect the trial court's pronouncement of the terms and conditions violated because of
variance between the pronouncement and the judgment. The State counters that the nunc
pro tunc judgment as to count four has rendered moot Henkel's claims. The State
concedes that the judgment as to count three contains more findings than the trial court
pronounced. 
          Henkel filed a motion for order nunc pro tunc on count four and not on count three. 
The trial court entered a judgment nunc pro tunc on count four.
           Clerical errors in both judgments and orders are subject to being corrected. English
v. State, 592 S.W.2d 949, 955-56 (Tex. Crim. App.1980) (en banc); Smith, 801 S.W.2d at
633. An error is clerical in nature if it did not come about as the product of judicial
reasoning. Alvarez v. State, 605 S.W.2d 615, 617 (Tex. Crim. App.1980). Whether an
error is judicial or clerical in nature is a question of law. Id; Allen v. State, 20 S.W.3d 164,
165 (Tex. App.–Texarkana 2000, no pet. h.). The purpose of a nunc pro tunc order is to
reflect correctly the judgment or order actually rendered by the court, which for some reason
was not entered of record at the proper time, and to reflect the truth of what actually
occurred. Alvarez, 605 S.W.2d at 617; Smith, 801 S.W.2d at 633.
          Several courts have found signed orders that conflicted with oral pronouncements
to be clerical errors. English, 592 S.W.2d at 954-55 (trial court's mistakenly signing order
form granting a new trial was clerical error; "[t]he signing of an order form is not all there
is to granting a new trial"); Galvan v. State, 995 S.W.2d 764, 765 (Tex. App.–San Antonio
1999, no pet.) (finding clerical error where court orally denied plea of double jeopardy, but
signed a written order with the "granted" line checked-off, and "evidence in the record
indicate[d] that the oral pronouncement was the correct manifestation of the court's
intention"); Jiminez v. State, 953 S.W.2d 293, 295 (Tex. App.–Austin 1997, pet. ref'd) (per
curiam) (finding clerical error where "record clearly reflect[ed] that the district court overruled
the motion to quash and that the written order granting the motion was mistakenly signed
by the court"). Generally, those cases involved a nunc pro tunc order and a hearing in
which the judge explained the circumstances making the judgment or order a clerical error. 
See English, 592 S.W.2d at 955 (hearing was held in which judge testified he signed order
by mistake); Jiminez, 953 S.W.2d at 295 (record included nunc pro tunc order reciting that
written order was signed inadvertently). 
          Here, the judgment nunc pro tunc on count four suggests the trial court did not intend
to vary from its oral pronouncements but there has been no such determination at the trial
level. In the corrected judgment, however, the conditions listed (1, 2, 3, and 4) do not
comport with the trial court's pronouncement at trial (conditions B, I, K, and L).


 Similarly, 
regarding count 3, the judgment reflects Henkel violated conditions 1 through 9, however,
the trial court pronounced he violated conditions B, O, Q, R, and T. We sustain Henkel's
fifth and sixth issues. We may remand this case to allow the trial court to make fact
determinations as to whether the judgment reflected what actually occurred. See Smith,
801 S.W.2d at 633. If on remand the trial court finds that the entry of such order was
clerical error, it could enter a nunc pro tunc order correcting the same. See id. However,
we have the power to modify incorrect judgments when we have the necessary information
to do so. See Tex. R. App. P. 43.2(b); see also Bigley v. State, 865 S.W.2d 26, 27-28 (Tex.
Crim. App. 1993) (en banc); Asberry v. State, 813 S.W.2d 526, 529-30 (Tex. App.–Dallas
1991, writ. ref'd.). When there is a variation between the oral pronouncement of sentence
and the written memorialization of the sentence, the oral pronouncement controls. Coffey
v. State, 979 S.W.2d 326, 328 (Tex. Crim. App. 1998) (en banc). The necessary
information is in the record before us.


 The judgment does not show the grounds for
adjudication as set out in the trial court's oral pronouncement at the hearing on both counts
3 and 4. 
VII. CONCLUSION
          We sustain Henkel's first issue. We have jurisdiction over Henkel's appeal. We
overrule his second and third issues complaining of ineffective assistance of counsel. 
Having found Henkel forfeited his complaint, we overrule his fourth issue. We sustain
Henkel's fifth and sixth issues and remand this cause to allow the trial court to correct the
variance between the trial court's oral pronouncement and the judgments entered, if it finds
clerical error. Accordingly, we affirm in part and remand in part.
                                                                                      ERRLINDA CASTILLO
                                                                                      Justice
Do not publish
Tex. R. App. P. 47.2(b)
 
Memorandum Opinion delivered and filed
this 14th day of April, 2005.