# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00610-CR

**Levar Vaughn, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. D-1-DC-07-300991, HONORABLE CHARLIE BAIRD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Levar Vaughn pleaded guilty to aggravated-assault family violence. *See* Tex. Penal Code Ann. § 22.02(a) (West Supp. 2008). The trial court deferred adjudication, *see* Tex. Crim. Proc. Code Ann. art. 42.12 (West Supp. 2009), placed Vaughn on community supervision for five years, and imposed additional terms including no contact with the victim, 200 hours of community service, 180 days in jail, continuous employment, and counseling. Approximately five months later, the State moved to proceed with an adjudication of guilt, alleging that Vaughn had violated the terms of his deferred adjudication. Vaughn pleaded true to the State's allegations, and after a hearing the court imposed a fourteen-year prison sentence. Vaughn appeals, arguing that (1) his original guilty plea was involuntary and void because he did not receive the required admonishments, *see* Tex. Crim. Proc. Code Ann. art 26.13 (West Supp. 2009); and (2) his rights were denied at the adjudication proceeding because the court prohibited his attorney from speaking on his behalf. We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 7, 2007, the trial court held a hearing on two plea agreements that Vaughn had reached with the State. The first agreement concerned cause number D-1-DC-06-206859 (the "859" cause), which was a misdemeanor assault charge. The second agreement concerned cause number D-1-DC-07-300991 (the "991" cause), which was the felony assault charge that is the subject of this appeal. The hearing transcript indicates that the trial court initially referred to the second cause as "D-1-DC-07-300951" rather than "D-1-DC-07-300991." The remainder of the transcript makes clear that this was a one-time mistake (if not simply a typographical error in the transcript) and that there were only two causes before the court—859 and 991.

Before accepting Vaughn's guilty pleas, the court asked Vaughn whether he had ever been treated for any mental disease, defect, or illness. Vaughn answered no. The court also asked Vaughn whether he had had enough time to discuss his case with his attorneys; whether his attorneys had answered all of his questions and explained everything to him; whether he understood exactly what was going on at the plea hearing; whether he was pleading guilty solely because he was guilty; whether anybody had promised him anything, threatened him, or coerced him to get him to plead guilty against his will; whether his attorneys had thoroughly explained his written plea agreements to him; whether he was aware of all of his rights; and whether he wanted to waive and give up all of those rights and continue pleading guilty. Finally, after informing Vaughn of the range of punishments he could receive by pleading guilty, the court asked Vaughn whether he understood the full range of possible punishments. Vaughn answered yes to all of these questions.

2

The court then admitted into evidence, without objection from Vaughn, the written plea agreements that Vaughn and his attorney had signed with the State. The court then sentenced Vaughn. On the 859 charge, the court sentenced Vaughn to 280 days in jail and immediately discharged the sentence based on time already served. On the 991 charge, the court deferred adjudication, placed Vaughn on community supervision for five years, and imposed additional terms including no contact with his victim, 200 hours of community service, 180 days in jail, continuous employment, and counseling. These terms mirrored the terms in the written plea agreement that Vaughn and his attorney had signed with the State.

On February 1, 2008, the State filed a motion to proceed with an adjudication of guilt on the 991 charge (the "motion"). The State amended its motion several times, ultimately alleging that Vaughn had violated the terms of his deferred adjudication by missing an appointment with his community-supervision officer; failing to pay court costs, supervision fees, and a Crime Stoppers fee; missing work without the court's permission; testing positive for drugs; having contact with his assault victim; and assaulting his victim a second time.

The court scheduled a hearing on the State's motion for September 11, 2008. Before the hearing, Vaughn and his attorney (the same one representing him in this appeal) signed a form entitled "Defendant's Plea of True, Voluntary Statements, Waivers, Stipulations & Judicial Confession to Pleadings Seeking Revocation or Adjudication" (the "form"). Among other things, the form stated that Vaughn admitted the truth of the allegations in the State's motion; understood the possible consequences of pleading true; waived his right to remain silent; and waived his right to appeal.

3

At the hearing on the State's motion, the court admitted Vaughn's signed form without objection. The court subsequently asked Vaughn whether he wanted to put on evidence concerning punishment. Defense counsel responded that she wanted to express Vaughn's deepest apologies for not complying with the terms of his release. The court replied that if Vaughn wanted to apologize, he needed to take the stand and do it himself.

Defense counsel subsequently called Vaughn to the stand. On direct-examination, Vaughn claimed that he had contacted his victim only once since being sentenced. On cross-examination, however, he admitted that he had actually contacted her more than once and had also had a physical altercation with her. The State called several witnesses and introduced photographic and documentary evidence. At the end of the proceeding, the Court stated:

> Mr. Vaughn, when we first—we were talking about your case this morning, my thought was that if you came clean and pled true . . . I'd revoke your probation and send you to prison for ten years and consider giving you shock probation, but after all this evidence and all this testimony . . . [,] I can't do that any more . . . . I assess your punishment at 14 years' confinement in the Institutional Division of the Texas Department of Criminal Justice.

Vaughn subsequently filed this appeal.

## STANDARD OF REVIEW

Courts must give certain pre-sentencing admonishments to defendants who are pleading guilty. *See* Tex. Crim. Proc. Code art 26.13. Although these admonishments protect important constitutional rights, they are not themselves constitutionally required. *VanNortrick v. State*, 227 S.W.3d 706, 708 (Tex. Crim. App. 2007). Thus, a trial court need only "substantially

4

comply" with the admonishment statute. Tex. Crim. Proc. Code Ann. art 26.13(c); *VanNortrick*, 227 S.W.3d at 708. If a trial court fails to do so, we review the entire record to determine whether its failure affected the defendant's substantial rights. *VanNortrick*, 227 S.W.3d at 708-09. The critical issue in conducting such a review is whether "we have a fair assurance that the defendant's decision to plead guilty would not have changed had the court admonished him" properly. *Anderson v. State*, 182 S.W.3d 914, 919 (Tex. Crim. App. 2006).

Defendants have both a statutory and a common-law right to allocute (i.e., to address whether there is any legal reason why sentence should not be imposed) before being sentenced. *See* Tex. Crim. Proc. Code Ann. art. 42.07 (West 2006) ("Before pronouncing sentence, the defendant shall be asked whether he has anything to say why the sentence should not be pronounced against him."); *Eisen v. State*, 40 S.W.3d 628, 631-32 (Tex. App.—Waco 2001, pet. ref'd). The law is not settled, however, as to whether this right is constitutional as well. *See Edmond v. State*, 116 S.W.3d 110, 115 n. 6 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (declining to address whether right to allocution is constitutional); *Eisen*, 40 S.W.3d at 634-36 (concluding that right to allocution is not guaranteed by United States Constitution but noting that United States Supreme Court has not itself answered that question). Nevertheless, the Texas Court of Criminal Appeals has held that a defendant cannot successfully appeal the denial of the right to allocute if he does not object to the denial in the sentencing court. *See Tenon v. State*, 563 S.W.2d 622, 623 (Tex. Crim. App. 1978); *McClintick v. State*, 508 S.W.2d 616, 617-18 (Tex. Crim. App. 1974) (op. on reh'g).

On the other hand, certain rights that are clearly grounded in the United States and Texas Constitutions—including the right to remain silent, the right to effective assistance of counsel,

and the right to due process, all of which Vaughn invokes—cannot be forfeited by failing to raise them before sentencing. *See Robles v. State*, 577 S.W.2d 699, 703 (Tex. Crim. App. 1979). Rather, they must be waived consciously, intelligently, and voluntarily by the person who holds them. *Id*. Thus, if the record reveals that a defendant was denied one of these rights in the process of pleading guilty, we will reverse unless we can determine beyond a reasonable doubt that the denial did not contribute to his punishment. *See* Tex. R. App. P. 44.2(a).

## DISCUSSION

Vaughn raises two points of error. We will address them in turn.

***Point One:  Whether Vaughn's Original Guilty Plea Was Involuntary and Void Because Vaughn Did Not Receive the Required Admonishments Before Sentencing***

Vaughn argues that his original guilty plea was involuntary and void because the trial court did not substantially comply with the admonishment requirements of code of criminal procedure article 26.13. Again, that article requires courts to give certain pre-sentencing admonishments to defendants who are pleading guilty. *See* Tex. Crim. Proc. Code Ann. art. 26.13. These admonishments may be given orally or in a written, signed plea agreement. *See id*. art. 26.13(d). Vaughn argues that the record does not demonstrate that he received the required admonishments either orally or in writing.

The transcript of Vaughn's plea hearing indicates that he did not receive all of the required admonishments orally. The transcript also indicates, however, that the court admitted into evidence a written, signed plea agreement. If that agreement contained all of the required

6

admonishments, then the trial court complied with article 26.13. *See id.*; *Forcey v. State*, 265 S.W.3d 921, 924 (Tex. App.—Austin 2008, no pet.).

Vaughn argues that the copy of the agreement in the clerk's record does not "indicate that Mr. Vaughn understood the admonitions and was aware of the consequences of the plea." He appears to base this argument on the fact that the copy of the agreement in the record is incomplete. This incompleteness is clearly the result of clerical error, though; after Vaughn filed his brief, the district court clerk sent us a supplemental record that contains a complete copy of Vaughn's plea agreement. This copy shows that Vaughn received and signed off on all of the required admonitions.

It is important to note that Vaughn does not claim he did not receive and sign off on the required admonitions; he merely claims that the record does not indicate he did so. The supplemental record puts this argument to rest.

Vaughn also seems to argue that there was confusion at his plea hearing as to what causes were before the court, and that as a result he did not plead guilty knowingly and intelligently. He seems to base this claim on the fact (discussed above) that the trial court initially misread the cause number of his aggravated-assault family violence charge. Vaughn suggests that this misreading made it seem as though three cause numbers were before the court rather than two.

We find this argument unpersuasive. Although the hearing transcript indicates that the trial court did initially refer to the 991 cause as "D-1-DC-07-300951" rather than "D-1-DC-07-300991," the remainder of the transcript makes clear that this was a one-time mistake (if not simply a typographical error in the transcript) and that there were only two causes before the court—859 and 991. The transcript does not indicate that any of the hearing's participants were confused as to the

number or nature of the causes before the court. As a result, Vaughn cannot meet his appellate burden of showing that his guilty plea was not knowing and intelligent. *See Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998). We overrule Vaughn's first issue.

***Point Two: Whether Vaughn's Rights Were Denied at the Adjudication Proceeding Because the Court Prohibited His Attorney from Speaking on His Behalf***

Vaughn argues that he was deprived of various rights at his adjudication hearing, including the right to allocute, the right to remain silent, the right to effective assistance of counsel, and the right to due process. He argues that the court prohibited his attorney from speaking on his behalf, so he was forced to take the stand to defend himself, which resulted in facts coming out that led the court to impose a harsher sentence than it would have had Vaughn not taken the stand. Vaughn bases his claim on the following exchange that occurred at the sentencing hearing:

> THE COURT: . . . Does either side have any evidence to put on in the issue of punishment?
>
> . . . .
>
> DEFENSE COUNSEL: . . . I wanted to just tell you that Levar is extremely—I think what's most distressing about this is that he feels like he failed you personally.
>
> THE COURT: Absolutely. He 100 percent failed me personally. I'm not going to take it personally, but that's exactly what he did. He made representations to me, and he did not keep his word to the Court.
>
> DEFENSE COUNSEL: And he apologizes deeply.
>
> THE COURT: Why don't you not apologize for him? If you want to put on testimony and ask him questions, that's fine.
>
> DEFENSE COUNSEL: Okay.

8

As this exchange reveals, Vaughn's complaint stems from the fact that the court prohibited his attorney from offering Vaughn's out-of-court (i.e., hearsay) apology. In other words, although Vaughn uses the term "allocution," his argument is essentially that he should have been able to introduce mitigating evidence free from cross-examination. *Cf. Garza v. State*, No. AP-75477, 2008 Tex. Crim. App. Unpub. LEXIS 865, at *12 (Tex. Crim. App. Nov. 26, 2008) (not designated for publication).

Neither the United States Supreme Court nor the Texas Court of Criminal Appeals has held that a defendant has a constitutional right to present mitigating evidence free from cross-examination before punishment is assessed. *See, e.g.*, *Jenkins v. Anderson*, 447 U.S. 231, 238 (1980); *Renteria v. State*, 206 S.W.3d 689, 698 (Tex. Crim. App. 2006). Furthermore, the United States Supreme Court has not found that the United States Constitution mandates a right of allocution free from cross-examination before punishment is assessed. *See, e.g.*, *Hill v. United States*, 368 U.S. 424, 429 (1962) (finding no constitutional violation when trial court violated federal procedural rule mandating that court ask defendant if he has anything to say before sentence is imposed). The Supreme Court declined to consider this question after the Fifth Circuit Court of Appeals held that a capital defendant did not have a constitutional right to make a statement of remorse free from cross-examination before punishment was assessed. *See United States v. Hall*, 152 F.3d 381, 397 (5th Cir. 1998), *cert. denied*, 526 U.S. 1117 (1999), *abrogated on other grounds by United States v. Martinez-Salazar*, 528 U.S. 304 (2000). Likewise, the Texas Court of Criminal Appeals has not interpreted the Constitution as requiring such a right. *See Lewis v. State*, 815 S.W.2d 560, 568 (Tex. Crim. App. 1991) ("Remorse following commission of a serious crime

9

may well be a circumstance tending in some measure to mitigate the degree of a criminal's fault, but it must be presented in a form acceptable to the law of evidence.").

We also note that Vaughn did not complain at the sentencing hearing that he was being denied the right to allocute. He has thus waived the issue on appeal. *See Tenon*, 563 S.W.2d at 623; *McClintick*, 508 S.W.2d at 617-18.

In sum, the trial court did not violate any of Vaughn's rights by requiring Vaughn to take the stand before offering mitigating evidence. We overrule Vaughn's second issue.

**CONCLUSION**

For the reasons stated above, we affirm the trial court's judgment.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed:   June 25, 2010

Do Not Publish

10