**Affirmed as Modified; Opinion Filed February 10, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-01259-CR

**WILLIAM MCKINLEY DECKER, SR., Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 4**
**Dallas County, Texas**
**Trial Court Cause No. F-1730527-K**

## MEMORANDUM OPINION

Before Justices Whitehill, Schenck, and Richter[1]
Opinion by Justice Schenck

William McKinley Decker, Sr. entered an open plea of guilty to the offense of aggravated sexual assault of a child. The trial court accepted his plea, found him guilty, and assessed punishment at fifty-five years' confinement. In three issues, he asserts the trial court violated his fundamental right to a neutral and detached arbiter and violated his statutory and common-law rights to allocution.[2] The State, by cross-issue, asserts the trial court's judgment should be modified to include an affirmative finding that the victim of the alleged offense was younger than 14 years of age. We affirm the trial court's judgment as modified by this opinion. Because all issues are settled in the law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

---

[1] The Hon. Martin Richter, Justice, Assigned

[2] "Allocution" refers to a trial judge affording a criminal defendant the opportunity to "present his personal plea to the Court in mitigation of punishment before sentence is imposed." *McClintick v. State*, 508 S.W.2d 616, 618 (Tex. Crim. App. 1974) (op. on reh'g).

BACKGROUND

Originally, appellant was indicted for the felony offense of continuous sexual abuse of a child. Upon the State's motion, the charged offense was reduced to the felony offense of aggravated assault of a child. Appellant then entered his open plea of guilty and executed a judicial confession. The plea exposed appellant to a punishment range of 5 to 99 years or life in prison and a fine up to $10,000. TEX. PENAL CODE ANN. § 12.32.

The evidence presented to the trial court established the following. The complainant, F.D., is appellant's biological daughter. To the outside observer, appellant appeared to be a good father to F.D. He attended F.D.'s dance recitals, was involved in her Girl Scout troop, and participated in the "Dad's Club" at her elementary school. Nevertheless, appellant began sexually abusing F.D. when she was four or five years old. That abuse continued until F.D. was ten or twelve. Appellant treated F.D. as a substitute wife after appellant lost interest in his wife, F.D.'s mother.

The trial court heard the details of the abuse, which involved numerous sex acts, and about how appellant failed to heed F.D.'s repeated pleas that he stop while he engaged her in those acts, that need not be detailed here. Part of the abuse included appellant performing "body checks" of F.D., during which he claimed to be looking for ingrown hairs and allergic reactions. Approximately two years prior to trial, appellant moved to Colorado taking F.D. with him to live with him as his wife. The Colorado authorities eventually received a report that F.D. had disclosed sexual abuse, which led to a forensic interview and police investigation. During the investigation, F.D. was removed from appellant's home and placed with her grandmother. When confronted with the allegation and of the need to remove F.D., appellant did not deny the alleged abuse and said, "well, okay," and then proceeded to pack F.D.'s personal items. The investigator described appellant's behavior as "odd;" and testified that she had never had a reaction like that before when

telling someone they are accused of sexually abusing their own child. Appellant admitted what he did was wrong, but said that he would still love F.D.

F.D. did not recognize appellant's actions as abuse until she reached the fourth grade. She then began writing about the abuse in her diary. During the forensic interview, F.D. revealed she hid knives in her room to defend against appellant and that she had contemplated suicide. She had in fact made two attempts to take her life, first by cutting her wrists and then by prescription medication overdose. F.D. has been diagnosed with post-traumatic stress disorder, bipolar disorder, and an anxiety disorder. She no longer trusts men. She fears appellant is going to come and get her. When appellant was brought back to Texas to be booked into the Dallas jail, she was scared "half to death."

The trial court found appellant guilty of aggravated assault of a child and sentenced him to fifty-five years' confinement. Appellant's trial counsel filed a motion for new trial on appellant's behalf asserting the verdict is contrary to the law and evidence. Appellant filed his own motion in which he asserted the record contained insufficient evidence to support his conviction and indicated ineffective assistance of counsel. The trial court overruled both motions and this appeal followed.

## DISCUSSION

### I. Judicial Bias

In his first issue, appellant urges the trial court committed reversible error of both a fundamental and structural nature because the trial court judge was biased against him.

We begin by noting that appellant does not direct us to any portion of the record that would indicate that he made a request, objection, or motion based on the trial court's alleged bias. *See* TEX. R. APP. P. 33.1(a) (requiring a timely request, objection, or motion to preserve a complaint for appellate review). He specifically did not file a motion to recuse the trial court judge

or seek a new trial on the basis of bias. Absent an objection, a defendant waives error unless it is fundamental—that is, the error creates egregious harm. *See Mendez v. State*, 138 S.W.3d 334, 338 (Tex. Crim. App. 2004). In this case, we need not determine whether the alleged error was fundamental because, after reviewing the record, we find no signs of relevant bias or partiality. *See Brumit v. State*, 206 S.W.3d 639, 644–45 (Tex. Crim. App. 2006) (declining to decide whether an objection is required to preserve an error of this nature and instead resolving the issue on the basis that the record did not reflect partiality of the trial court).

Due process requires a neutral and detached judge. *Id.* at 645. To reverse a judgment on the ground of improper conduct or comments of the judge, we must be presented with proof (1) that judicial impropriety was in fact committed, and (2) of probable prejudice to the complaining party. *Id.* We review the entire record. *Id.* Judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. *Id.* Judges are not potted plants. *Sims v. State*, No. 05-18-00139-CR, 2018 WL 6333250, at *2 (Tex. App.—Dallas Nov. 29, 2018, no pet.) (mem. op., not designated for publication). Of course, best practice might suggest a judge should refrain from sharing his or her thoughts in many instances. Nevertheless, there is no requirement that a judge remain unmoved by the evidence presented or silent in its face, as he or she is the only one capable, in a bench trial, of making a determination based on the evidence presented.

Judicial remarks may suggest improper bias if they reveal an opinion deriving from an extrajudicial source, but when no extrajudicial source is alleged, such remarks will constitute grounds for reversal only if they reveal such a high degree of favoritism or antagonism as to make a fair judgment impossible. *Brumit*, 206 S.W.3d at 645. To constitute bias clearly on the record, the deep-seated antagonism must be apparent from the judicial remarks themselves, without

"interpretation or expansion" by an appellate court. *Gaal v. State*, 332 S.W.3d 448, 457 (Tex. Crim. App. 2011).

In this case, appellant does not allege that the trial court judge's remarks revealed an opinion derived from an extrajudicial source; therefore, he must show that the trial court displayed a deep-seated favoritism or antagonism that would make fair judgment impossible. *See Brumit*, 206 S.W.3d at 645. He alleges two instances in the record show the trial court's bias against him. More particularly, appellant contends the trial court's reference to "our victim" when pronouncing appellant's guilt[3] and failure to ask him if he wanted to exercise his right to allocution, show the trial court's bias.

Appellant claims the trial court's reference to "our victim" demonstrates the trial court had abandoned its neutral status and aligned itself with the victim. We disagree. The comment was made after appellant had already entered a plea of guilty, made a judicial confession, and evidence had been admitted establishing that appellant had abused F.D., and, as a result, that F.D. was, in fact, the victim of appellant's crime. There was no dispute over whether F.D. was the alleged victim in this case or that the judge's comment came after his guilt was established. The context in which the judge used the term "our victim" does not establish an alignment with the victim, and an expression of sympathy for F.D. based on the evidence presented at trial does not violate the due process clause. *See United States v. Rangel*, 697 F.3d 795, 804–05 (9th Cir. 2012). We conclude the trial court's words themselves do not evince a deep-seated favoritism or antagonism that would make fair judgment impossible. *See Gaal*, 332 S.W.3d at 457.

Appellant further claims the trial court's failure to ask him to speak in mitigation of

---

[3] In pronouncing appellant's guilt, the trial court stated, "All right. The defendant having plead guilty, the Court finds him guilty. The defendant has admitted starting a sexual contact with his five-year old daughter because of sexual dissatisfaction with his wife, admitted to digital penetration, vaginal and anal sex with the same daughter. The defendant also asked probation about the possibility of transferring to another state because he woundn't be able to – he would have a hard time refraining from sex with our victim."

punishment shows clear bias because it demonstrates the trial court could not wait to send appellant to prison. Appellant points us to nothing in the record that would associate the judge's error in failing to permit allocution to any kind of bias against him. On the contrary, allocution error has become a regrettably common feature of sentencing in our trial courts and, thus, is hardly an indication of disparate treatment in this case.[4] While the record reveals that the trial court was generally impatient throughout the trial, it was the State that bore the brunt of the trial court's frustration with the speed at which it made its case. Appellant has failed to establish that the trial court's failure to provide appellant with the right of allocution was anything other than an oversight on the part of the trial court.

After reviewing the entire record, we conclude the trial court did not display bias or prejudice towards appellant thereby establishing a detachment from his role as a neutral and detached hearing officer. Accordingly, we overrule appellant's first issue.

## II. Allocution

In his second and third issues, appellant claims the trial court violated his statutory and claimed common-law rights to allocution. The term "allocution" refers to a trial judge's asking a criminal defendant to speak in mitigation of the sentence to be imposed. *Williamson v. State*, No. 05-17-00411-CR, 2018 WL 388025, at *3 (Tex. App.—Dallas Jan. 12, 2018, pet. ref'd) (mem. op., not designated for publication) (citing *Eisen v. State*, 40 S.W.3d 628, 631–32 (Tex. App.—Waco 2001, pet. ref'd) (quoting A Dictionary of Modern Legal Usage 44–45 (Bryan A. Garner ed., 2d ed., Oxford 1995)).

---

[4] *See, e.g., Tenon v. State*, 563 S.W.2d 622, 623 (Tex. Crim. App. 1978); *Hall v. State*, No. 05-18-00442-CR, 2019 WL 3955772, at *2 n.1 (Tex. App.—Dallas Aug. 22, 2019, pet. ref'd) (mem. op., not designated for publication); *Speights v. State*, No. 06-19-00019-CR, 2019 WL 3417362, at *2 (Tex. App.—Texarkana July 30, 2019, no pet.) (mem. op., not designated for publication); *Gay v. State*, No. 13-16-00158-CR, 2017 WL 2705446, at *1 (Tex. App.—Corpus Christi–Edinburgh June 22, 2017, no pet.) (mem. op., not designated for publication); *Gallegos-Perez v. State*, No. 05-16-00015-CR, 2016 WL 6519113, at *2 (Tex. App.—Dallas Nov. 1, 2016, no pet.) (mem. op., not designated for publication); *Norton v. State*, 434 S.W.3d 767, 771 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Jarvis v. State*, 353 S.W.3d 253, 254 (Tex. App.—Fort Worth 2011, pet. ref'd); *Eisen v. State*, 40 S.W.3d 628, 637 (Tex. App.—Waco 2001, pet. ref'd); *Nicholson v. State*, 738 S.W.2d 59, 63 (Tex. App.—Houston [1st Dist.] 1987, no pet.); *Miles v. State*, 688 S.W.2d 219, 227 (Tex. App.—El Paso 1985, pet. ref'd); *Hernandez v. State*, 628 S.W.2d 145, 147 (Tex. App.—Beaumont 1982, no pet.).

While the right of allocution is not constitutionally grounded, the United States Supreme Court has recognized that the right to allocution is a common-law right. *Green v. Unites States*, 365 U.S. 301, 304 (1961). That common-law right was recognized in Texas at least until the enactment of section 42.07 of the Texas Code of Criminal Procedure. *See Clare v. State*, 54 S.W.2d 127, 129 (Tex. Crim. App. 1932) (op. on reh'g). In 1965, the Texas Legislature codified a statutory-version of the right of allocution. *See* TEX. CODE CRIM. PROC. ANN. art. 42.07 (requiring that the defendant be asked, before sentence is pronounced, "whether he has anything to say why the sentence should not be imposed against him."). Following the enactment of code of criminal procedure article 42.07, the questions of whether the statute encompassed the same scope as the former common-law practice, or, if not, supplanted any potential broader reach of the common-law right remained unanswered. *See, Hall v. State*, No. 05-18-00442-CR, 2019 WL 3955772, at *2 n.1 (Tex. App.—Dallas Aug. 22, 2019, pet. ref'd) (mem. op., not designated for publication) (Schenck, J., concurring). As it stands, the statute is framed in two parts, with the first appearing to impose no limit on what the defendant might say, and the second constraining what the judge might act upon, limiting him or her to the enumerated legal bars to the pronouncement of sentence. CRIM. PROC. art. 42.07. So read, the statute would only conflict with the common law *if* the common law in fact permitted a judge to act more broadly, in which case, article 1.27 of the code of criminal procedure may provide for continued application of the common-law right. *Id.* art. 1.27.[5]

We are not postured to answer these questions in this case, however. The record here shows that after hearing punishment evidence, the trial court pronounced sentence without first

---

[5] However, in *Tenon v. State*, the court of criminal appeals declined to address the appellant's contention that article 42.07 did not replace the common law right of allocution, and, in addition to noting appellant failed to preserve her allocution complaint, noted that there was no contention that any of the statutory reasons set forth in article 42.07 to prevent the pronouncement of sentence ever existed. 563 S.W.2d 622, 623 (Tex. Crim. App. 1978) (panel op.). The court concluded, "Surely appellant would not have this court reverse this cause and order a new sentencing so that when the court asks her if she has anything to say why sentence should not be pronounced against her she can then answer, 'Nothing.'" *Id.* at 624.

asking appellant whether he had anything to say in mitigation. However, to complain on appeal of the denial of the right of allocution, whether statutory or one claimed under the common law, controlling precedent requires that a defendant timely object. *See Gallegos-Perez v. State*, No. 05-16-00015-CR, 2016 WL 6519113, at *2 (Tex. App.—Dallas Nov. 1, 2016, no pet.) (mem. op., not designated for publication) (citing *Tenon v. State*, 563 S.W.2d 622, 623 (Tex. Crim. App. 1978) (panel op.); *McClintick v. State*, 508 S.W.2d 616, 618 (Tex. Crim. App. 1974)). We are compelled to overrule appellant's second and third issues.

### III. Judgment

The State, by cross-issue, asserts this Court should modify the judgment to include an affirmative finding that the victim was younger than 14 years of age.

Aggravated sexual assault is a sexually violent offense. CRIM. PROC. art. 62.001(6)(A). In the trial of a sexually violent offense, the judge shall make an affirmative finding of fact and enter the affirmative finding in the judgment in the case if the judge determines that the victim or intended victim was younger than 14 years of age at the time of the offense. *Id.* art. 42.015(b). The judgment for a sexually violent offense should reflect this finding in addition to any statement of the victim's age that is entered in judgments of conviction for registrable offenses. *Id.* art. 42.01, § 7. An affirmative finding that the victim was younger than 14 years old triggers the prohibited-employment provisions of the sex-offender-registration program. *Id.* art. 62.063(b).

The trial court found appellant guilty of aggravated sexual assault of a child younger than 14, an offense for which a victim younger than 14 years of age is an element. PENAL § 22.021(a)(2)(B). Having determined F.D. was younger than 14 years old at the time of the offense, the trial court was required to enter an affirmative finding to that effect in the judgment.

We have the authority to modify the trial court's judgment to make the record speak the truth. TEX. R. APP. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992).

Accordingly, we sustain the State's cross-issue and modify the trial court's judgment to reflect an affirmative finding that the victim was younger than 14 years of age at the time of the offense.

## CONCLUSION

As modified, we affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

DO NOT PUBLISH
TEX. R. APP. P. 47
181259F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

WILLIAM MCKINLEY DECKER SR,
Appellant

No. 05-18-01259-CR    V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 4, Dallas County, Texas
Trial Court Cause No. F-1730527-K.
Opinion delivered by Justice Schenck.
Justices Whitehill and Richter participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

To reflect an affirmative finding that the victim was younger than 14 years of age at the time of the offense.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 10th day of February, 2020.