

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-21-00006-CR

_____

JACOB GROVES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 426th District Court
Bell County, Texas
Trial Court No. 79,342; Honorable Steve J. Duskie, Presiding

July 9, 2021

## MEMORANDUM OPINION

Before PIRTLE, PARKER, and DOSS, JJ

Following an open plea of guilty, Appellant, Jacob Groves, was convicted of the

first degree felony offense of aggravated sexual assault of a child[1] and sentenced to a

---

[1] TEX. PENAL CODE ANN. § 22.021(a)(2)(B) (WEST 2020).

term of imprisonment of eight years.[2]   Through this appeal, Appellant alleges the trial court (1) abused its discretion by failing to conduct a follow-up competency inquiry, (2) erred by denying him his statutory right to allocution, and (3) erred by assessing unlawful and unconstitutional court costs.  We overrule Appellant's first two issues and affirm the trial court's judgment of conviction; however, we sustain his third issue and reverse and remand the trial court's judgment for entry of a corrected judgment *nunc pro tunc* to reflect the proper assessment of court costs as set forth herein.[3]

## BACKGROUND

Appellant, twenty-two years old at the time of his plea, moved into the home of Lori Schaefer when he was seventeen.[4]  Schaefer was "like [Appellant's] second mom."  He lived there until he was twenty, at which time he moved into his aunt's house for a brief two-month period.  It was during this two-month period that he began having sex with his aunt's twelve-year-old stepdaughter, M.M.  He was arrested and charged with the offense of aggravated sexual assault of a child after M.M. admitted there had been some sexual activity between herself and Appellant.[5]

---

[2] A first degree felony is punishable by imprisonment for life or for any term of not more than ninety-nine years or less than five years and a fine not to exceed $10,000.  TEX. PENAL CODE ANN. § 12.42 (West 2020).

[3] Originally appealed to the Third Court of Appeals, sitting in Austin, this appeal was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts.  TEX. GOV'T CODE ANN. § 73.001 (WEST 2013).  Should a conflict exist between precedent of the Third Court of Appeals and this court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court.  TEX. R. APP. P. 41.3.

[4] Schaefer testified during sentencing that she had known Appellant since he was fifteen years old because he and her daughter had dated for about three years.  The two were no longer dating by the time he moved into Schaefer's home.

[5] The indictment alleged that Appellant "did then and there intentionally and knowingly cause the penetration of the sexual organ of [M.M.], a child who was then and there younger than 14 years of age, by defendant's sexual organ."

Prior to his plea, Appellant was evaluated to ensure his competency to stand trial.[6] Friends, family, and counsel had noticed some "sort of gap" that might have indicated Appellant was on the autism spectrum.[7] M.M.'s mother characterized him as having the "mindset of a child" while family members and Appellant himself noted he had ADHD and dyslexia and struggled with comprehension as well as making everyday choices. A board certified forensic clinical psychologist and neuropsychologist conducted the evaluation and concluded that, in his opinion:

> [Appellant] has a rational understanding of the charges against him and the potential consequences of the pending criminal proceedings. He was able to disclose accounts, pertinent facts, events, and states of mind and would be able to rationally testify to the same in court. He is able to engage in a reasoned choice of legal strategies and options and has a rational understanding of the nature of the legal proceedings. He would be able to exhibit appropriate courtroom behavior. He has a rational capacity to engage with counsel. He may need a sex offender risk assessment given his alleged offense.

Before Appellant pleaded guilty in open court, counsel explained that the evaluation had been conducted and told the court the "evaluation came back that he is competent." The court engaged in question-and-answer dialogue with Appellant to determine whether he understood his rights, his plea, and the offense with which he was charged. After some explaining to Appellant and additional discussion with counsel, the court found Appellant to be competent.

---

[6] Counsel filed a written document entitled *Motion Suggesting Incompetency and Request for Examination* in July 2020. Shortly thereafter, the court signed an *Order Appointing Disinterested Expert to Examine Defendant.* Appellant was evaluated approximately five weeks before the plea hearing.

[7] Appellant was apparently evaluated to determine whether he fell on the autism spectrum. The record does not contain a copy of any report that might have been generated but according to Schaefer, that evaluation determined Appellant did not have autism. But, Schaefer noted she understood that if he did have autism, it was "mild."

The court then ordered a presentence investigation. The proceeding continued approximately five weeks later, at which time Appellant's mother and Schaefer testified. After hearing the testimony and re-reviewing the presentence investigation report, the trial court found Appellant guilty of aggravated sexual assault of a child and assessed punishment against him at eight years of imprisonment in the Institutional Division of the Texas Department of Criminal Justice.

### ANALYSIS

#### ISSUE ONE—THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO CONDUCT A FOLLOW-UP COMPETENCY INQUIRY

Through his first issue, Appellant argues that although the pretrial evaluation determined he was competent to stand trial, the pretrial evaluations and reports in the record, Appellant's conduct and statements during the hearings, and the testimony offered at sentencing "collectively constitute[d] some evidence" that he "may have been incompetent at the time of his plea and his sentencing." Because the trial court has a duty to "remain vigilant and attentive to changed circumstances suggesting incompetency," Appellant asserts, the trial court abused its discretion by failing to conduct further inquiry into his competency.

A fundamental principle of our criminal justice system is that, as a matter of constitutional due process, an incompetent criminal defendant may not stand trial. *Clark v. State*, No. 05-18-00944-CR, 2020 Tex. App. LEXIS 2607, at *4-6 (Tex. App.—Dallas Mar. 30, 2020, no pet.) (mem. op., not designated for publication) (citing *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018); *Drope v. Missouri*, 420 U.S. 162, 171, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975) ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of

4

the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to trial.")).  The constitutional competency standard to stand trial is codified in the statutory scheme stated in Texas Code of Criminal Procedure article 46B, which describes the procedures for determining whether a defendant is competent to stand trial.  *See* TEX. CODE CRIM. PROC. ANN. arts. 46B.001-.055 (West 2020).

We review a trial court's competency decision for an abuse of discretion.  *Clark*, 2020 Tex. App. LEXIS 2607, at *4 (citing *Montoya v. State*, 291 S.W.3d 420, 426 (Tex. Crim. App. 2009), *superseded by statute on other grounds as recognized in Turner v. State*, 422 S.W.3d 676, 692 & n.31 (Tex. Crim. App. 2013); *Moore v. State*, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999)).  A trial court does not abuse its discretion absent a showing that its decision was arbitrary or unreasonable. *Clark*, 2020 Tex. App. LEXIS 2607, at *4 (citing *Phillips v. State*, No. 05-16-00850-CR, 2017 Tex. App. LEXIS 6248 (Tex. App.—Dallas July 6, 2017, no pet.) (mem. op., not designated for publication)).

Procedurally, a trial court utilizes a two-step process for making competency determinations before it may ultimately conclude that a defendant is incompetent to stand trial.  *Clark*, 2020 Tex. App. LEXIS 2607, at *4-5.  The first step is an informal inquiry; the second step is a formal competency trial.  *Id.* (citing *Boyett*, 545 S.W.3d at 563).  "An informal inquiry is called for upon a 'suggestion' from any credible source that the defendant may be incompetent."  *Clark*, 2020 Tex. App. LEXIS, 2607 at *5; TEX. CODE CRIM. PROC. ANN. art. 46B.004(a), (c), (c-1).

Substantively, incompetency to stand trial is shown if a person does not have: "(1) sufficient present ability to consult with the person's lawyer with a reasonable degree of

5

rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person." *Clark*, 2020 Tex. App. LEXIS 2607, at \*5 (citing *Boyett*, 545 S.W.3d at 563 (quoting TEX. CODE CRIM. PROC ANN. art. 46B.003(a)).

A defendant's mental illness or deficiency does not, of itself, mean he is incompetent. *Clark*, 2020 Tex. App. LEXIS 2607, at \*5 (citing *Turner v. State*, 422 S.W.3d 676, 691 (Tex. Crim. App. 2013)). Rather, the inquiry is whether a defendant's mental state "operates in such a way as to prevent him from rationally understanding the proceedings against him or engaging rationally with counsel in the pursuit of his own best interests." *Clark*, 2020 Tex. App. LEXIS 2607, at \*4 (citation omitted). Evidence that raises this possibility necessitates an informal inquiry. *Id.* Nonetheless, "[a] defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence." *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 46B.003(b)).

At the informal inquiry, there must be "some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." *Clark*, 2020 Tex. App. LEXIS 2607, at \*6 (citing *Boyett*, 545 S.W.3d at 563 (quoting TEX. CODE CRIM. PROC. ANN. art. 46B.004(c)). At this stage, the trial court "must consider only that evidence tending to show incompetency" and "put [ ] aside all competing indications of competency." *Clark*, 2020 Tex. App. LEXIS 2607, at \*6 (citations omitted). If there is some evidence supporting incompetency, the trial court must order a psychiatric or psychological competency examination, and, except for certain exceptions, must hold a formal competency trial. *Id.* *See* TEX. CODE CRIM. PROC. ANN. arts. 46B.005(a), (b), 46B.021(b).

6

If the formal competency trial results in a finding of competency, the trial court is not obligated to revisit the issue later absent a material change of circumstances suggesting that the defendant's mental status has deteriorated. *Clark*, 2020 Tex. App. LEXIS 2607, at *6 (citing *Turner*, 422 S.W.3d at 693. S*ee Hageman v. State*, No. 03-13-00549-CR, 2015 Tex. App. LEXIS 5738 (Tex. App.—Austin June 5, 2015, no pet.) (mem. op., not designated for publication)).

As support for his contention that the trial court abused its discretion in not making further inquiry into his competency to stand trial, he first points to the report of the psychologist. He argues that the evaluation left many questions unanswered and suggested Appellant was "borderline competent." He contends that the psychologist did not document Appellant's educational or medical history beyond his self-report and did not ask whether Appellant participated in special education classes in school. He notes the report shows he apparently completed high school and had maintained employment making $11.00 per hour. However, Appellant argues, the psychologist noted his confusion about the role of the jury in plea bargaining and in the guilt-innocence phase. Further, Appellant complains, he displayed a lack of understanding of the rights he was waiving when he said he did not "know exactly what rights" he was waiving and misunderstood what it meant to waive his right to remain silent. Once the court explained, however, Appellant indicated his understanding. Counsel also points to Appellant's response that he was "making a plea" when the court asked whether he was competent and whether he understood what he was doing that day. From our review of the record, it appears Appellant answered the court's second question first and then affirmatively answered when the court again asked whether he was competent. Counsel agreed Appellant was competent but did have some "discrepancy between his perceptional

7

reasoning and his processing speed." We do not see the instances of confusion noted by Appellant to be indicative of a necessity for the court to conduct further inquiry into his competency. *See Montoya*, 291 S.W.3d at 426 (stating "[a] review of the record indicates that the court of appeals took instances of the defendant's confusion or misunderstanding of the judge's questions in isolation and out of context as evidence of incompetence when the rest of the record shows that the issues were immediately and easily clarified by the trial judge or defendant's attorney and that the defendant indicated her understanding"). *See also Rojas v. State*, 228 S.W.3d 770, 773 (Tex. App.—Amarillo 2007, no pet.) (noting that the appellant's "statement to the trial court that he didn't always understand what counsel told him fails to show an inability to consult with 'a reasonable degree of rational understanding'"). Nor do we find counsel's statement regarding Appellant's apparent perceptional reasoning and processing speed sufficient to prompt the court to engage in further inquiry of Appellant's competency. *See generally Williams v. State*, Nos. 14-09-00042-CR, 14-09-00043-CR, 2010 Tex. App. LEXIS 8113, at *16 (Tex. App.—Houston [14th Dist.] Oct. 7, 2010, no pet.) (concluding that the appellant's assertion that "I can't even think straight" did not mandate a competency inquiry).

As further grounds for his contention, Appellant points to the presentence investigation interview in which he did not fully verbalize the specific facts of the offense. He said, "[s]omething happened that should not have happened. I confessed because it happened, and I want to right the wrong." Appellant made a similar statement to the psychologist, saying "a mistake happened. I kind of did something I shouldn't have, and ever since then I feel blah about myself." But, the report from the psychologist also includes the statement, "Mr. Groves stated he was charged with a felony, aggravated sexual assault of a child, and this as an allegation of having sexual relations with a 12-

year-old minor." Under these circumstances, the trial court was within its discretion to determine from all of these statements that Appellant understood the charges against him and was competent to stand trial.

Appellant argues that his statements in court as well as those in the evaluation and by others, including the victim's mother that he had the "mindset of a young child" and that the sexual conduct between himself and M.M. was "a mistake on both parties" and by his mother that he had some learning disabilities and behavioral issues, should have prompted the trial court to conduct further inquiry into his competency to stand trial. Because it failed to do so, Appellant requests this court to abate the appeal and order a retrospective competency inquiry. We disagree. Even assuming Appellant was unable to manage his daily decisions and personal affairs, this would not rise to the level of incompetency such that the trial court was required to conduct further inquiry into his competency. *Brubaker v. State*, No. 11-04-00121-CR, 2005 Tex. App. LEXIS 6305, at *12 (Tex. App.—Eastland Aug. 11, 2005, no pet.) (citing *Koehler v. State*, 830 S.W.2d 665, 666-67 (Tex. App.—San Antonio 1992, no pet.)).

The trial court had before it the evaluation of a board certified forensic clinical psychologist and neuropsychologist. That expert had concluded that Appellant had "a rational understanding of the charges against him and the potential consequences of the pending criminal proceedings. He was able to disclose accounts, pertinent facts, events, and states of mind and would be able to rationally testify to the same in court. He is able to engage in a reasoned choice of legal strategies and options and has a rational understanding of the nature of the legal proceedings. He would be able to exhibit appropriate courtroom behavior. He has a rational capacity to engage with counsel."

9

Furthermore, prior to Appellant's open plea of guilty, his counsel explained that the evaluation had been conducted and told the court the "evaluation came back that he is competent." The court engaged in a question-and-answer dialogue with Appellant to determine whether he understood his rights, his plea, and the offense with which he was charged. After some explaining to Appellant and additional discussion with counsel, the court found Appellant to be competent. Significantly, both Appellant and his counsel told the court Appellant was competent. Appellant and his counsel also signed plea papers that included a written waiver with the statement "I am mentally competent . . . ." The two also signed a waiver of Code of Criminal Procedure article 39.14 disclosures that included an affirmation by Appellant's attorney that he believed Appellant was "competent to knowingly make this waiver . . . ."

The record also includes the presentence investigation report that was prepared less than a week before the first sentencing hearing. The report does not mention any mental health diagnosis or treatment, including autism and in fact, indicates Appellant suffers from none. We note also that Appellant's mother and Schaefer testified during the sentencing phase. Appellant's mother agreed that he does not have an intellectual disability but only had some difficulty with reading. Schaefer agreed that if anyone said Appellant had autism, it would be mild. Several courts have concluded that evidence of learning disabilities alone is insufficient to show incompetency to stand trial. *See e.g., Gaines v. State*, Nos. 2-02-498-CR, 2-02-499-CR, 2004 Tex. App. LEXIS 9147, at *15 (Tex. App.—Fort Worth Oct. 14, 2004, pet. ref'd) (mem. op., not designated for publication) (a learning disability or attention deficit hyperactivity disorder is an insufficient basis to claim incompetence to stand trial) (citing *Culley v. State*, 505 S.W.2d 567, 569 (Tex. Crim. App. 1974) (holding that testimony that defendant had learning disabilities

10

and was in special education classes did not raise issue of competency); *Ortiz v. State*, 866 S.W.2d 312, 316 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd) (finding evidence of learning disabilities alone is not sufficient to show defendant incompetent to stand trial)).

Furthermore, we must give the trial court's firsthand assessment of Appellant's ability to assist counsel and his understanding of the proceedings great deference. *Clark*, 2020 Tex. App. LEXIS 2607, at *9 (citing *McDaniel v. State*, 98 S.W.3d 704, 713 (Tex. Crim. App. 2003)). We cannot find, based on the record before us, that the trial court abused its discretion in choosing not to engage in further inquiry regarding Appellant's competency to stand trial. Accordingly, we resolve Appellant's first issue against him.

### ISSUE TWO—THE TRIAL COURT ERRED BY DENYING APPELLANT HIS STATUTORY RIGHT TO ALLOCUTION

Through his second issue, Appellant contends the trial court erred when it denied his mandatory statutory right to allocution. This error, he argues, affected his substantial rights "because the court received information from several sources suggesting that [Appellant] may be incompetent."

"Allocution" refers to a trial court's inquiry as to whether a criminal defendant wishes to "speak in mitigation of the sentence to be imposed." *Nelson v. State*, No. 05-18-00938-CR, 2019 Tex. App. LEXIS 3935, at *13-14 (Tex. App.—Dallas May 15, 2019, no pet.) (mem. op., not designated for publication) (citing *Eisen v. State*, 40 S.W.3d 628, 631-32 (Tex. App.—Waco 2001, pet. ref'd); *Allocution*, Black's Law Dictionary (10th ed. 2014)). Article 42.07 of the Code of Criminal Procedure, which implements a statutory right to allocution, requires the defendant to be asked, before sentence is pronounced,

whether "he has anything to say why the sentence should not be pronounced against him."  TEX. CODE CRIM. PROC. ANN. art. 42.07.  The circumstances in which sentence cannot be pronounced are limited to when a defendant (1) has been pardoned, (2) is incompetent to stand trial, or (3) escapes after conviction and before sentencing and another person is brought to sentencing who is not the defendant.  *Id.*

Appellant notes that after the trial court took a recess to re-review the presentence investigation report, it sentenced Appellant to serve a term of eight years in prison without discussing its reasons for imposing that sentence.  More significantly, he asserts, the trial court failed to ask him whether he had anything to say as to why sentence should not be pronounced.  This, he contends, "violated the court's mandatory duty under article 42.07 to seek an allocution from the defendant and constitutes error."

It is important to note that Appellant did not object to the lack of an opportunity to make an allocution statement at the time the trial court pronounced sentence, nor did he raise the issue when the court asked, "Anything else from either side?"  Furthermore, no motion for new trial was filed in this matter.  On appeal, Appellant argues, citing *Proenza v. State*, 541 S.W.3d 786, 801 (Tex. Crim. App. 2017), that the statutory right to allocution is waivable only and thus, no objection was required to preserve this complaint for our review.  We disagree.

Most appellate complaints must be preserved by timely request for relief in the trial court.  TEX. R. APP. P. 33.1(A)(1); *Unkart v. State*, 400 S.W.3d 94, 98 (Tex. Crim. App. 2013).  There are some exceptions to this rule as set forth in *Marin v. State*, 851 S.W.2d 275, 278-80 (Tex. Crim. App. 1993).  Two "relatively small" categories of errors— violations of "rights which are waivable only" and denials of "absolute systemic

requirements"— may be addressed on appeal regardless of whether an objection was made in the trial court. *Saldano v. State*, 70 S.W.3d 873, 888 (Tex. Crim. App. 2002) (citing *Marin*, 851 S.W.2d at 280).

In the case cited to us by Appellant, *Proenza*, 541 S.W.3d at 788-89, the Court of Criminal Appeals considered whether a complaint that the trial court's questions and statements to a witness constituted an improper comment on the weight of the evidence fell within either of these two categories of error such that it could be raised for the first time on appeal. The court noted that the "general preservation requirement's application turns on the nature of the right allegedly infringed, as opposed to the circumstances under which it was raised." *Id.* at 796 (citation omitted). Looking at whether a complaint the trial judge improperly commented on the weight of the evidence was a forfeitable right, the court stated our adversarial system "depends upon, or at the very least assumes, the decision-maker's impartiality." *Id.* at 799. The court also stated that "[a] law that puts a duty on the trial court to act *sua sponte*, creates a right that is waivable only." *Id.* at 800-01. The court concluded the right to be tried in a proceeding devoid of improper judicial commentary is at least a waivable-only right under *Marin*. *Id.* at 801.

Appellant argues that like article 38.05 at issue in *Proenza*, the article at issue here, article 42.07, is "written in mandatory terms" and puts a duty on the trial court to act *sua sponte*. Further, Appellant asserts, the article 42.07 right to allocution likewise represents a "centuries long tradition of the Anglo-American system of criminal jurisprudence" and has been "an integral part" of Texas criminal jurisprudence for over 150 years. As such, Appellant contends, the statutory right to allocution under article 42.07 is a waivable-only right under the *Marin* framework.

13

Appellant does recognize that two Texas appellate courts have reached a different conclusion. *See Amador v. State*, No. 14-14-00405-CR, 2015 Tex. App. LEXIS 7726, at *3-4 (Tex. App.—Houston [14th Dist.] July 28, 2015, pet. ref'd) (mem. op., not designated for publication); *Arguellez v. State*, No. 13-09-00136-CR, 2009 Tex. App. LEXIS 7832, at *7-8 (Tex. App.—Corpus Christi Oct. 8, 2009, no pet.) (mem. op., not designated for publication). He nevertheless argues that because those courts did not conduct any in-depth analysis of the issue, we should not utilize those opinions as authority here. We, however, respectfully disagree with Appellant's argument that the right of allocution is a right that must be expressly waived.

Other appellate courts have also found that an objection to a denial of allocution is required to preserve a complaint on appeal. *See, e.g., Bowser v. State*, Nos. 05-17-00504-CR, 05-17-00505-CR, 2018 Tex. App. LEXIS 5557, at *5-6 (Tex. App.—Dallas July 20, 2018, pet. ref'd) (mem. op., not designated for publication) (citations omitted); *Mendez v. State*, No. 05-07-01624-CR, 2009 Tex. App. LEXIS 1713, at *9-10 (Tex. App.—Dallas March 11, 2009, no pet.) (mem. op., not designated for publication). Appellant distinguishes cases like these because he contends that one of the statutory reasons not to impose sentence, i.e., incompetency to stand trial, arguably exists here where it did not in those cases. While we agree Appellant has indeed made that argument here and that was not the situation in the other cases cited herein, the record before us shows that Appellant was found to be competent to stand trial and the court was well aware of this potential ground under article 42.07. We thus cannot say that these circumstances raise the statutory right to allocution under article 42.07 to that of a waivable-only right.

Accordingly, because Appellant failed to raise this issue before the trial court, he has failed to preserve this issue for our review. As such, we overrule Appellant's second issue.

### ISSUE THREE—THE TRIAL COURT ERRED BY ASSESSING UNLAWFUL AND UNCONSTITUTIONAL COURT COSTS

Through his final issue, Appellant challenges the trial court's apparent assessment of several court costs.[8] He first notes that the court said nothing about court costs when it announced Appellant's sentence.[9] He notes also that the written judgment indicates "N/A" in the space designated for court costs. However, the clerk's record includes a certified bill of costs that reflects Appellant owes $317 in unpaid court costs.[10] Appellant contends the trial court could have properly assessed a total of $236.50 in court costs. He argues that most of the costs that appear to be assessed in the bill of costs were, despite the fact that his offense was committed in 2018, assessed under 2019 statutes that are applicable only to a conviction for an offense committed on or after January 1, 2020. Appellant contends, and we agree, costs should have been assessed under the law in effect at the time he committed the offense. Furthermore, he asserts that the $25

---

[8] While Appellant did not object to the assessment of costs in the trial court, he may challenge their constitutionality for the first time on appeal because the costs were not imposed in open court and the written judgment does not contain an itemization of imposed costs. *Dye v. State*, No. 07-19-00370-CR, 2020 Tex. App. LEXIS 7501, at *3-4 (Tex. App.—Amarillo Sept. 16, 2020, no pet.) (mem. op., not designated for publication) (citing *London v. State*, 490 S.W.3d 503, 506-07 (Tex. Crim. App. 2016)).

[9] Legislatively mandated fees and costs may be withdrawn from an inmate account without regard to his ability to pay and do not need to be included in the oral pronouncement of sentence or in the written judgment to be imposed on a convicted defendant. *Owen v. State*, 352 S.W.3d 542, 546 (Tex. App.—Amarillo 2011, no pet.) (citing *Armstrong v. State*, 340 S.W.3d 759, 766-67 (Tex. Crim. App. 2011)).

[10] According to Appellant, the new fee structure allows for the assessment of a state consolidated fee of $185, a local consolidated fee of $105, and other fees. Act of May 23, 2019, 86th Leg., R.S., ch. 1352, § 1.03, § 1.05, sec. 134.101, 2019 Tex. Gen. Laws 3982, 3982-84, 3985-86. These fees were assessed against him as shown in the *Official Bill of Cost* in the record.

time-payment fee reflected in the bill of costs is one that has been declared partially unconstitutional.

The State responds, agreeing that the bill of costs improperly imposes court costs under the current rather than the prior version of the statutes. However, the State asserts that the court costs, if assessed properly, should be increased because Appellant has overlooked the DNA fee statute and the fact that the sheriff's fee has been routinely imposed in Bell County and routinely upheld by the Austin Court of Appeals. The State agrees that the time-payment fee cannot be imposed.

Appellant concedes the trial court could have properly assessed a $4.00 juror services fee,[11] a $40.00 district clerk fee,[12] a $25.00 records management fee,[13] a $10.00 peace officer fee for taking and approving a bond,[14] a $5.00 peace officer fee for commitment or release,[15] a $4.00 technology fee[16] and a $5.00 courthouse security fee[17] under the provisions of the Texas Code of Criminal Procedure provisions that were

---

[11] Act of May 27, 2005, 79th Leg., R.S., ch. 1360, § 5, 2005 Tex. Gen. Laws 4255, 4256 (repealed 2019).

[12] Act of May 27, 1995, 74th Leg., R.S., ch. 764, § 1, 1995 Tex. Gen. Laws 3969, 3969 (repealed 2019).

[13] Act of May 28, 2005, 79th Leg., R.S., ch. 804, § 2, 2005 Tex. Gen. Laws 2777, 2777-78 (repealed 2019).

[14] Act of May 11, 2009, 81st Leg., R.S., ch. 87, § 6.008, 2009 Tex. Gen. Laws 208, 231 (amended 2019).

[15] *Id.*

[16] Act of May 31, 2009, 81st Leg., R.S., ch. 1183, § 1, 2009 Tex. Gen. Laws 3751, 3751 (amended 2019).

[17] Act of Apr. 11, 1997, 75th Leg., R.S., ch. 12, § 1, 1997 Tex. Gen. Laws 51, 51 (amended 2019).

applicable at the time of his offense.[18]  Thus, the trial court could have properly assessed fees of $93.00 under those provisions.  Further, Appellant concedes the trial court could have assessed a $133.00 consolidated fee,[19] $2.50 of a $25.00 time-payment fee,[20] $6.00 judicial support fee[21] and a $2.00 indigent defense fee under the Local Government Code, totaling $243.50.[22]  Lastly, Appellant acknowledges the trial court could have assessed a $5.00 electronic filing fee under the former section 51.851(d) of the Texas Government Code but could have chosen to waive that fee as it appears it did in this case.  *See* Act of May 16, 2013, 83d Leg., R.S., ch. 1290, § 2, sec. 51.851(d), 2013 Tex. Gen. Laws 3270, 3271 (repealed effective January 1, 2020).  As such, Appellant argues, the trial court could have assessed a total of $236.50 in court costs in this matter.

The State agrees with the costs as set forth by Appellant but for two of the fees.[23] First, the State argues Appellant overlooked a $250 DNA fee that is applicable to his case. Former Code of Criminal Procedure article 102.020 provided that "[a] person shall pay as

---

[18] Appellant also notes the trial court could have properly assessed a $50.00 warrant fee but did not do so.

[19] Act of June 2, 2003, 78th Leg., R.S., ch. 209, § 62(a), sec. 133.102(a)(1), 2003 Tex. Gen. Laws 979, 996 (amended 2019).

[20] Act of June 2, 2003, 78th Leg., R.S., ch. 209, § 62(a), sec. 133.103(a), 2003 Tex. Gen. Laws 979, 996-97 (amended 2019).  However, the Court of Criminal Appeals released an opinion on March 31, 2021, while this matter was pending before us finding that the trial court assessed this fee prematurely. Thus, the judgment should be modified to delete the $25 time-payment fee.  *See Dulin v. State,* No. PD-856-19, 2021 Tex. Crim. App. LEXIS 273, at *11 (Tex. Crim. App. Mar. 31, 2021).

[21] Act of May 15, 2007, 80th Leg., R.S., ch. 1301, § 3, 2007 Tex. Gen. Laws 4380, 4380 (repealed 2019).

[22] TEX. LOC. GOV'T CODE § 133.107.

[23] In its brief, the State says it "is satisfied with the list in *Willis*, except for the time payment fee, which the State concedes would be prematurely imposed based on the recent *Dulin* decision from the Court of Criminal Appeals."  The list in *Willis* very closely follows that set forth by Appellant.  *See Willis v. State*, 532 S.W.3d 461, 467-69 (Tex. App.—Texarkana 2017, no pet.).

a cost of court: (1) $250 on conviction of an offense listed in Section 411.1471(a)(1), Government Code." Appellant was convicted of aggravated sexual assault of a child under section 22.021 of the Penal Code. *See* TEX. PENAL CODE ANN. § 22.021. This is one of the offenses listed in section 411.1471(a)(1) of the Government Code. *See* TEX. GOV'T CODE ANN. §411.1471(a)(1)(N) (West 2019). Accordingly, the DNA fee was statutorily required to be assessed as a cost of court in Appellant's case. *See Alcaraz v. State*, 481 S.W.3d 712, 714 (Tex. App.—Houston [1st] Dist. 2015, pet. ref'd).

Second, the State contends the fee for peace officers should be $25.00 because the Austin Court of Appeals has routinely rejected challenges to the same amount for the same fees from the same county as Appellant's case. The State cites *Love v. State*, 03-15-00462-CR, 2016 Tex. App. LEXIS 2877, at *5-6 (Tex. App.—Austin March 22, 2016, no pet.) (mem. op., not designated for publication) ($25 sheriff's fee upheld: "In light of the fact that the provision authorizes fees for law-enforcement personnel and allows for the imposition of more than one fee and given that the fees at issue in this case generally fall within the range of permissible fees outlined in that provision, we cannot conclude that the district court erred by imposing the sheriff's fee"); *Whary v. State*, 03-16-00737-CR, 2017 Tex. App. LEXIS 4674, at *6-7 (Tex. App.—Austin May 24, 2017, no pet.) (mem. op., not designated for publication) (same); *Davis v. State*, 03-16-00334-CR, 2017 Tex. App. LEXIS 4723, at *5-8 (Tex. App.—Austin May 25, 2017, no pet.) (mem. op., not designated for publication) (same); *Pugh v. State*, 03-18-00027-CR, 2018 Tex. App. LEXIS 6762, at *9-11 (Tex. App.—Austin Aug. 24, 2018, no pet.) (mem. op., not designated for publication) (same) to support its contention. While we agree that a sheriff's fee of $25 would fall within the range of permissible fees from $5.00 to $50.00, the cases on which the State relies are those in which a $25 fee was assessed and the

trial court upheld those fees because it was within the permissible range. However, here, a $25 fee was not assessed and we will not impose one here simply because other courts have. To do so would place us in the position of the trial court, not a reviewing court. Furthermore, a $5 fee is supported by the record.

As noted, the bill of costs in this record also included a provision for a time-payment fee pursuant to Texas Local Government Code section 133.103. Section 133.103 requires a person convicted of a criminal offense to pay a fee of $25 if the person: (1) has been convicted of a felony or misdemeanor; and (2) pays any part of a fine, court costs, or restitution on or after the 31st day after a judgment is entered assessing the fine, court costs, or restitution. *See* TEX. LOCAL GOV'T CODE ANN. § 133.103(a) (West 2008).[24] Under former subsections (b) and (d) of section 133.103, ninety percent of the fees collected under the statute were sent into a general revenue fund. *Id.* Because subsections (b) and (d) of section 133.103 did not direct the time-payment fees to be used for criminal justice purposes, several courts of appeals have held that those subsections violate the separation of powers doctrine and are therefore facially unconstitutional. *Dye v. State*, No. 07-19-00370-CR, 2020 Tex. App. LEXIS 7501, at *3-4 (Tex. App.—Amarillo Sept. 16, 2020, no pet.) (mem. op., not designated for publication) (citing *Dulin v. State,* 583 S.W.3d 351, 353 (Tex. App.—Austin 2019), *vacated by*, Nos. PD-0856-19, PD-0857-19, 2021 Tex. App. LEXIS 273 (Tex. Crim. App. Mar. 31, 2021)); *Ovalle v. State*, 592 S.W.3d 615, 618 (Tex. App.—Dallas 2020, pet. filed); *Johnson v. State*, 573 S.W.3d 328, 340 (Tex. App.—Houston [14th Dist.] 2019, pet. filed)). Under *Dulin*, the time-payment

---

[24] Section 133.103 of the Texas Local Government Code was "redesignated" as article 102.030 of the Texas Code of Criminal Procedure and amended by Acts of June 15, 2019, 86th Leg., R.S., ch. 1352, §§ 2.54, 4.40(33), 2019 Tex. Gen. Laws 3981, 4010, 4035.

fee should thus be reduced by ninety percent. *Dulin*, 583 S.W.3d at 352-53. Accordingly, Appellant seeks modification of the judgment to reduce the time-payment fee from $25 to $2.50. However, the Court of Criminal Appeals recently issued an opinion concluding that a trial court's assessment of the $25 time-payment fee while an appeal is pending is premature. *Dulin*, 2021 Tex. Crim. App. LEXIS 273, at *11. As such, the $25 time-payment fee should be entirely struck, without prejudice to the fee being assessed later if, more than thirty days after the issuance of the appellate mandate, Appellant has failed to completely pay any fine, court costs, or restitution that he owes. *Id.* We accordingly sustain Appellant's last issue.

### CONCLUSION

Having resolved each of Appellant's first two issues against him, we affirm the trial court's judgment of conviction; however, having sustained his last issue, we reverse the trial court's judgment and remand this matter to the trial court for the entry of a corrected judgment *nunc pro tunc* reflecting the correct assessment of court costs as set forth herein.

Patrick A. Pirtle
Justice

Do not publish.

20