**AFFIRM and Opinion Filed October 3, 2024.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-23-00422-CR

**JOHN PAUL MANUEL, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 3**
**Dallas County, Texas**
**Trial Court Cause No. F14-76843-J**

## MEMORANDUM OPINION

Before Justices Molberg, Breedlove, and Kennedy
Opinion by Justice Kennedy

Appellant John Paul Manuel entered an open plea of guilty to murder. The trial court accepted his plea, found him guilty, and assessed punishment at forty years' confinement. In four issues, appellant asserts the trial court violated his statutory and common-law rights to allocution, imposed a grossly disproportionate punishment thereby violating his rights under the Eighth Amendment's prohibition of cruel and unusual punishments, and imposed a sentence that violated his rights under the Texas Penal Code's direct expression of the objectives to be served. We

affirm the trial court's judgment. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

## FACTUAL AND PROCEDURAL BACKGROUND

Irma Martinez was shot and killed on the evening of December 15, 2014, while seated in her vehicle waiting for her son at a friend's house. The firearm used during the offense belonged to appellant. Appellant and two other individuals, Terrance Brown and Antoine Tovar, were charged with the capital murder of Martinez.

Prior to trial, the State requested that the court reduce the offense for which appellant was charged to the lesser included offense of first-degree felony murder. The court did so, and appellant entered an open plea of guilty to murder and his judicial confession and stipulation of evidence was admitted into evidence. In his judicial confession and stipulation, appellant confessed and stipulated that "on or about 15th day of December 2014, in Dallas County, Texas [he] did unlawfully then and there intentionally or knowingly cause the death of IRMA MARTINEZ . . . by SHOOTING [Martinez] WITH A FIREARM, A DEADLY WEAPON." The plea exposed appellant to a punishment range of 5 to 99 years or life imprisonment and a fine not to exceed $10,000. *See* TEX. PENAL CODE § 12.32. The trial court found appellant guilty of murder, assessed punishment at forty years' imprisonment and a fine of $500, and certified appellant's right to appeal.

## EVIDENCE AT PUNISHMENT HEARING

At the punishment hearing, the State called Martinez's husband to testify about the impact the murder of Martinez had on her family. Martinez's husband testified about Martinez's role in the family, about how she kept everyone together, and about how difficult things had been since she was murdered, especially for Martinez's 16-year-old son, who was present at the crime scene shortly after the shooting.

Appellant testified on his own behalf and called various family members to attest to his good character and to testify about how appellant is easily influenced by others, that he is a follower and not a leader, and that although he knew better, he fell in with the wrong crowd. Appellant's mother, father, and stepmother testified appellant was angry about his parents divorcing and acted out thereafter. Appellant's father testified that he gave appellant multiple chances to make good decisions, but appellant continued down the wrong path. Appellant's stepmother testified they had taken steps to get appellant back in school and that appellant was on the road back to where he needed to be when the murder occurred. But she also testified that a few days prior to the murder, she found a clip from a gun in the glove compartment of their car that belonged to appellant. As a result, on December 13, 2014, appellant's father gave appellant a choice to either go to church with them or leave his house. Appellant chose to leave and apparently connected with Brown and Tovar.

At the punishment hearing, appellant acknowledged that on December 15, 2014, he, accompanied by Brown and Tovar, traveled to a gas station to purchase cigarettes and "K2." After Brown and Tovar made the purchase, they returned to the car and Brown stated they needed money for gas. Appellant did not have money but suggested they go to his "homegirl's" house to get money. When they arrived at her house, they discovered no one was home. As Brown drove away, Tovar noticed a woman, later identified as Martinez, sitting in a car. Tovar instructed Brown to drive toward Martinez's car. Brown did so, and appellant and Tovar exited the car. Appellant claimed Tovar had already taken possession of his gun before they got out of the vehicle. Appellant knew Tovar "was up to something, because he was plotting." Appellant claimed he got out of the car because he felt pressured and enticed to do so. Appellant claimed Tovar was the individual who shot and killed Martinez.

After the murder, Brown, Tovar, and appellant fled the scene without calling 9-1-1. Rather than try to get away from Brown and Tovar, appellant stayed with them. They drove to another neighborhood, where they broke the phone they took from Martinez, before driving to a house where Brown or Tovar apparently sometimes stayed. Two women were present at the house. One of the women confided in appellant that Tovar and Brown were attempting to coerce her into prostitution. Appellant remained with this group throughout the night and the next day, and it was evident that arrangements for prostitution were being made with the

use of his phone. Appellant, Brown, and Tovar were apprehended and arrested on December 16, 2014.

During cross-examination, appellant admitted to lying to detectives about his involvement in the murder of Martinez. Appellant first told detectives that he did not know anyone was killed, but later admitted to being present when the murder occurred.

At the punishment hearing, the State also introduced evidence of appellant's criminal activity during the days leading up to the murder of Martinez. On December 13, 2014, appellant sent a threatening text message to an individual named "Wan." On December 14, Tovar and appellant were together in a car when Tovar used appellant's gun to shoot multiple times at a "white boy" who they got into an altercation with at a gas station. In addition, the State introduced several photographs of appellant brandishing firearms and a social media post stating appellant works at "Middle FinGeR tO the Law."

The State also questioned appellant about his criminal history as a juvenile. In April 2012, appellant was placed on juvenile probation for burglary. The following month, he tested positive for marijuana and was required to complete a youth conversion mentoring program and drug intervention program. Appellant was detained again and ordered to complete an alternative initiative program.

During the pronouncement of appellant's sentence, the trial judge provided appellant with an explanation of how she determined his sentence. She explained

that she took into consideration appellant's familial support and eventual cooperation with detectives. She also took into consideration the severity of the offense, appellant's persistent lying, his dangerous lifestyle, and his refusal to take responsibility for his actions and show remorse. Appellant interrupted the trial judge during her explanation stating, "I mean, I said I was sorry." The trial judge responded, "I didn't ask you to open your mouth, young man . . . In fact, you opening your mouth hasn't helped you at all any time." The trial judge rendered judgment in accordance with her pronouncement at trial.

**DISCUSSION**

## I.     Right to Allocution

In his first and second issues, appellant argues he is entitled to a new sentencing hearing because the trial court violated his statutory and common-law rights to allocution. The State responds asserting appellant failed to preserve these complaints for review.

"Allocution" refers to a trial judge's asking a criminal defendant to speak in mitigation of the sentence to be imposed, but it has also "come to denote the accused person's speech in mitigation of the sentence, rather than the judge's address asking the accused to speak." *Johnson v. State*, No. 05-21-00785-CR, 2023 WL 3000572, at *2 (Tex. App.—Dallas Apr. 19, 2023, no pet) (mem. op., not designated for publication) (quoting *Eisen v. State*, 40 S.W.3d 628, 631–32 (Tex. App.—Waco 2001, pet. ref'd)) (quoting A Dictionary of Modern Legal Usage 44–45 (Bryan A.

Garner ed., 2d ed., Oxford 1995)).  The statutory right to allocution requires that the defendant be asked, before sentence is pronounced, "whether he has anything to say why the sentence should not be pronounced against him."  TEX. CODE CRIM. PROC. art. 42.07.  Article 42.07 identifies three specific legal reasons why a sentence cannot be pronounced against a defendant: (1) the defendant received a pardon; (2) he is incompetent; and (3) the defendant is not the person identified.  *Id.*

"To complain on appeal of the denial of the right of allocution, whether statutory or one claimed under the common law, controlling precedent requires that a defendant timely object."  *Johnson*, 2023 WL 3000572, at *2; *see also Hall v. State*, No. 05-18-00442-CR, 2019 WL 3955772, at *1 (Tex. App.—Dallas Aug. 22, 2019, pet. ref'd) (mem. op., not designated for publication).  Here, appellant did not object to the court's failure to afford him his right of allocution.  Although appellant raised his allocution complaint in a motion for new trial, "an appellant may raise a sentencing issue in a motion for new trial for the first time only if the appellant did not have the opportunity to object in the punishment hearing."  *Burt v. State*, 396 S.W.3d 574, 577 n. 4 (Tex. Crim. App. 2013).  Here, appellant had an opportunity to object in the punishment hearing to any denial of allocution; therefore, we conclude this issue is not preserved for our review.  *See Jacinto v. State*, No. 05-21-00211-CR, 2022 WL 1793418, at *3 (Tex. App.—Dallas June 2, 2022, pet. ref'd) (mem. op., not designated for publication) (concluding although appellant raised allocution complaint in motion for new trial, he had the opportunity to object that

–7–

trial court had denied right to allocution prior to sentencing and thus failed to preserve issue for appeal); *Loring v. State*, No. 05-18-00421-CR, 2019 WL 3282962, at *5 (Tex. App.—Dallas July 22, 2019, no pet.) (mem. op., not designated for publication) (concluding complaint that appellant was denied his common law right to allocution was not preserved for appellate review when first raised in motion for new trial). Accordingly, we overrule appellant's first and second issues.

## II. Punishment

In his third issue, appellant claims the trial court violated his rights under the Eighth Amendment by imposing a grossly disproportionate punishment. An allegation of disproportionate punishment is a valid legal claim. *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016). The concept of proportionality is embodied in the Constitution's ban on cruel and unusual punishment and requires that punishment be graduated and proportioned to the offense. U.S. CONST. amend VIII. But this is a narrow principle that does not require strict proportionality between the crime and the sentence. *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring). Rather, it forbids only extreme sentences that are "grossly disproportionate" to the crime. *Ewing v. California*, 538 U.S. 11, 23 (2003) (plurality opinion). While the United States Supreme Court has acknowledged the lack of clarity in its precedent regarding what factors may indicate gross disproportionality, it has nevertheless emphasized that a sentence is grossly disproportionate to the crime only in the exceedingly rare or extreme case. *Lockyer*

*v. Andrade*, 538 U.S. 63, 73 (2003).  Subject only to a very limited, exceedingly rare, and somewhat amorphous Eighth Amendment gross-disparity review, a punishment that falls within the legislatively prescribed range, and that is based upon the sentencer's informed normative judgment, is unassailable on appeal.  *See Ex parte Chavez*, 213 S.W.3d 320, 323–24 (Tex. Crim. App. 2006).

To determine whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime, a court must judge the severity of the sentence in light of the harm caused or threatened to the victim, the culpability of the offender, and the offender's prior adjudicated and unadjudicated offenses.  *Graham v. Florida*, 560 U.S. 48, 60 (2010).  In the rare case in which this threshold comparison leads to an inference of gross disproportionality, the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions.  *Id.*  If this comparative analysis validates an initial judgment that the sentence is grossly disproportionate, the sentence is cruel and unusual.  *Id.*

Appellant's forty-year sentence fell well within the statutory range of 5 to 99 years or life.  Appellant was convicted of murder, one of the most serious crimes in the Penal Code.  *Zorn v. State*, 222 S.W.3d 1, 3 (Tex. App.—Tyler 2002, pet. dism'd) (citing *K.L.M. v. State*, 881 S.W.2d 80, 85 (Tex. App.—Dallas 1994, no writ)). The trial judge explained that in reaching her opinion that the proper sentence for appellant is a sentence of forty years imprisonment she took into consideration the

enormous amount of support from his family, the fact that he had cooperated with the police to some extent, his fascination with guns, how he was choosing to live his life, and that he did not acknowledge or show any remorse for his part of Martinez's life being taken. We conclude, in light of the seriousness of the crime involved and appellant's role in same, his actions before and after the murder, and the matters the trial judge considered, which are supported by the record, his forty-year sentence is not one of those "rare" cases where gross disproportionality can be said to exist. Accordingly, there is no reason to compare his sentence to sentences imposed on others. *Graham*, 560 U.S. at 60. We overrule appellant's third issue.

In his fourth issue, appellant claims his forty-year sentence violates his rights under the penal code's expression of the objectives to be achieved under the code.

Section 1.02 of the penal code states the general purposes of the code "are to establish a system of prohibitions, penalties, and correctional measures to deal with conduct that unjustifiably and inexcusable causes or threatens harm to those individual or public interests for which state protection is appropriate." PENAL § 1.02. To accomplish that end, the code shall be construed to have six objectives, including insuring public safety through the deterrent influence of penalties, rehabilitation, and punishment to prevent likely recurrence of criminal behavior. *Id.* § 1.02(1); *Arballo v. State*, No. 05-19-00616-CR, 2020 WL 2847287, at *1 (Tex. App.—Dallas June 2, 2020, no pet.) (mem. op., not designated for publication). A trial court has a great deal of discretion to determine the appropriate punishment in

any given case. *See Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984). As with issues involving claims of excessive or disproportionate sentencing, so long as the sentence is within the proper range of punishment, as it is here, it will not generally be disturbed on appeal. *See Hicks v. State*, No. 05-20-00614-CR, 2021 WL 3042672, at *3 (Tex. App.—Dallas July 19, 2021, no pet.) (mem. op., not designated for publication); *Foster v. State*, 525 S.W.3d 898, 911 (Tex. App.—Dallas 2017, pet. ref'd).

Appellant entered a plea of guilty to first degree felony murder, punishable by a term of imprisonment of 5 to 99 years or life and a fine not to exceed $10,000. PENAL § 12.32. The trial judge assessed appellant's punishment at forty years' imprisonment. As stated *supra*, the trial judge provided a detailed explanation for her determination of appellant's punishment. She considered positive aspects for appellant, including his familial support and eventual cooperation with detectives, as well as the negative aspects, including his persistent lying, his dangerous lifestyle, and lack of remorse. Nothing in the record indicates the trial judge did not consider all of the objectives of section 1.02. Based on the nature of the offense and the evidence presented, we cannot conclude appellant's sentence violated the objectives of the penal code. We overrule appellant's fourth issue.

## CONCLUSION

We affirm the trial court's judgment.

/Nancy Kennedy/
NANCY KENNEDY
JUSTICE

DO NOT PUBLISH
TEX. R. APP. P. 47
230422F.U05



## Court of Appeals
### Fifth District of Texas at Dallas
## JUDGMENT

JOHN PAUL MANUEL, Appellant

No. 05-23-00422-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 3, Dallas County, Texas
Trial Court Cause No. F14-76843-J. Opinion delivered by Justice Kennedy. Justices Molberg and Breedlove participating.


Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 3rd day of October, 2024.